THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID AYALA *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 82—2765, 82—2766, 83—0886 cons.

Opinion filed March 24, 1986.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellants David Ayala and James Soto.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant Ruben Palomo.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, Lynn N. Egan, Michael E. Shabat, Jeanette Sublett, and William G. Lacy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a trial, where two juries simultaneously heard the evidence, defendants, David Ayala and James Soto, were convicted by one jury of murder, attempted murder, and conspiracy. They were sentenced to natural life for murder, 30 years for attempted murder and seven years for conspiracy, the sentences to run concurrently. Defendant, Ruben Palomo, was convicted by the second jury of attempted murder and conspiracy. He was sentenced to 30 years for attempted murder and seven years for conspiracy, the sentences to run concurrently. The appeal of defendant Palomo, case No. 83—886, was filed separately from the consolidated appeals of defendants Ayala and Soto, case Nos. 82—2765 and 82—2766. For purposes of this opinion, the three cases are hereby consolidated. On appeal, defendants Ayala and Soto contend that the trial court erred (1) by failing to instruct the jury on the presumption of doubt and burden of proof; (2) by granting a motion for substitution of judges made by the State's main witness; and (3) by imposing natural life sentences on defendants. Defendant Palomo contends on appeal that (4) the trial court improperly instructed the jury on attempted murder; and that (5) he was denied effective assistance of counsel.

Wally Cruz, a co-indictee of defendants, made an agreement with the State whereby the State would *nol pros* the murder charge against him and would recommend a sentence of five years for con-

spiracy in exchange for his testimony. Cruz testified at trial that he and the defendants, Ayala, Soto and Palomo, were members of the 26 boys street gang. The 26 boys street gang were enemies of the Latin Kings street gang. On August 16, 1981, a meeting of the 26 boys street gang was held at Ayala's home where the gang members discussed "making hits" on the Latin King gang members. Ayala and Cruz were present at the meeting. Soto and Palomo were upstairs in the house. Ayala received a telephone call from Lisa Suarez informing him that Latin King gang members were in Pietrowski Park in Chicago. Ayala passed out weapons to gang members, including a handgun, a rifle, a shotgun and a machine gun. Cruz, Soto and Palomo then got into a van owned by Ayala and drove towards Pietrowski Park.

As defendants approached the park in the van, they observed a large group of people in the park. They saw Lisa Suarez, who had earlier placed the telephone call to Ayala, on the street. Palomo asked her if the Kings were still in the park and she said they were. Palomo told the girls to go home because they would take care of things. Cruz drove down an alley and parked the van. Cruz waited in the van while Palomo and Soto walked down the alley carrying guns. Cruz heard gunshots and Palomo and Soto returned to the van stating someone might have been hit. Cruz then drove back to Ayala's house. Ayala received a phone call and told Soto and Palomo that they had killed two people and wounded one.

As a result of the shooting at Pietrowski Park, Juan Padilla, a member of the Latin Kings gang, was wounded by a gunshot to his back. Hector Valeriano, a Marine on leave who had gone to the park to play softball, was killed. Julie Limas, a 16-year-old high school student, was also killed.

At the instructions conference for the jury considering the charges against Ayala and Soto, no instruction on the presumption of innocence and burden of proof was tendered by the State, requested by the defense or required by the court. The instruction, therefore, was never read to the jury nor did they receive a written instruction.

■ Defendants Ayala and Soto initially contend that the trial court's failure to give the jury instruction on presumption of innocence and burden of proof denied them a fair trial. In *Taylor v. Kentucky* (1978), 436 U.S. 478, 56 L. Ed. 2d 468, 98 S. Ct. 1930, the supreme court held that the defendant was denied his due process rights where the trial court refused to give a requested instruction on presumption of innocence. The court stated that the presumption of innocence instruction is not a constitutional requirement but is "one

means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial." (436 U.S. 478, 486, 56 L. Ed. 2d 468, 475, 98 S. Ct. 1930, 1935.) In *Kentucky v. Whorton* (1979), 441 U.S. 786, 60 L. Ed. 2d 640, 99 S. Ct. 2088, decided a year after *Taylor*, the court made clear that the presumption of innocence instruction is not constitutionally required in every criminal case. The court held that a court must determine whether the failure to give the instruction deprived the defendant of a fair trial in light of the totality of the circumstances in each case. The court set forth the following guidelines:

> "In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under *Taylor*, such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." (441 U.S. 786, 789, 60 L.Ed. 2d 640, 643, 99 S. Ct. 2088, 2090.)

Applying this test, we do not believe the failure to give the presumption of innocence instruction in the case at bar, when viewed "in light of the totality of the circumstances," deprived defendants of a constitutionally fair trial. Before *voir dire* of the jury began, the trial court outlined and explained the fundamental principles of presumption of innocence and reasonable doubt. The court questioned each juror about the State's burden of proof and their obligation if that burden was not sustained. The record indicates that all jurors were present during the questioning of other jurors. Thus, the jurors heard the questions about fairness and burden of proof numerous times. During defense counsel's closing argument, the presumption of innocence of the defendants was repeatedly emphasized, as well as the burden of the State to prove each defendant guilty beyond a reasonable doubt. The verdict of the jury finds ample support in the record since it was based on the testimony of an eyewitness to the crime. Although the written presumption of innocence and burden of proof instruction should have been tendered to the jury, we conclude that its omission did not deny defendants a constitutionally fair trial. From our review of the record, the importance of the principles was adequately communicated to the jury by the trial court as well as the arguments of counsel.

▪ Ayala and Soto next contend that the trial court erred in granting the motion for substitution of judges of Wally Cruz, the

State's main witness. Cruz had been indicted, along with the defendants, for murder in the instant case. Defendants objected to a substitution of judges on the basis that the motion was not brought in good faith since Cruz was to be the State's main witness against defendants. We find defendant's argument without merit. By statute, an automatic substitution of judges is allowed upon written motion of a defendant within 10 days after a case is placed on a judge's trial court. (Ill. Rev. Stat. 1983, ch. 38, pars. 114—5(a), 114—5(b); *People v. Samples* (1982), 107 Ill. App. 3d 523, 437 N.E.2d 1232.) A review of the record indicates that the statutory requirements were complied with and the motion was properly allowed.

▋ Ayala and Soto further contend that the trial court violated their due process rights by imposing natural life sentences for multiple murders. Section 5—8—1(a)(1)(c), of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)) requires the mandatory imposition of a natural life sentence upon a defendant convicted of murdering more than one victim as the defendants were here. Where a defendant is convicted of a single murder, the trial court has discretion to impose a natural life sentence if the murder was accompanied by exceptionally brutal or heinous behavior or if any of the seven death qualifying factors are present. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b).) Defendants contend that those convicted of multiple murders should have the constitutional right to be sentenced in the same manner as those convicted of a single murder.

The legislature has wide discretion to prescribe penalties for offenses. (*People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.) Due process is satisfied if the statute in question is reasonably designed to remedy the evils which the legislature has determined to be a threat to public safety and welfare. (*People v. Mathey* (1984), 99 Ill. 2d 292, 458 N.E.2d 499.) In *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, our supreme court rejected a constitutional challenge to the natural life sentencing statute, holding that in view of the serious nature of the crime of multiple murder, the legislature was not prevented from fixing a minimum sentence of natural life imprisonment. We, therefore, uphold the imposition of the natural life sentence imposed on defendants for their conviction for multiple murder.

▋ Defendant Palomo contends that the trial court improperly instructed the jury on the law defining the intent required for attempted murder. We initially note that the defendant has waived this issue on review by failing to object to the trial court's instructions to the jury at trial or in his post-trial motion. (*People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513; *People v. Mallett* (1970), 45 Ill.

2d 388, 259 N.E.2d 241.) In reviewing the merits of the argument, we find the instructions given to the jury were proper. Where a defendant is charged with attempted murder, the jury is instructed on the crime of murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1) as well as the crime of attempt (Ill. Rev. Stat. 1983, ch. 38, par. 8—4). Specifically, the instruction defining murder given here provided that a person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill that individual or he knows that such acts will cause death to that individual. The defendant contends that this instruction allowed the jury to convict defendant of attempted murder where they found he had something less than a specific intent to kill.

This issue was addressed by this court in *People v. Olbrot* (1982), 106 Ill. App. 3d 367, 435 N.E.2d 1242. In *Olbrot*, the jury was given the same instruction defining murder as in the instant case and the defendant argued that this instruction permitted the jury to convict defendant without finding he had a specific intent to kill. The court held the instruction proper since it permitted a conviction on the basis of defendant's belief that death would follow from the conduct in question. We find *Olbrot* dispositive of this issue.

Defendant cites the recent decision of this court in *People v. Kraft* (1985), 133 Ill. App. 3d 294, 478 N.E.2d 1154. We find *Kraft* inapposite to the facts of this case. In *Kraft*, the court held that the instructions given in an attempted murder prosecution were error where they permitted a conviction upon a finding, defendant acted with knowledge that his actions created a strong probability of death. In the case at bar, the jury was instructed that defendant could only be found guilty of attempted murder if defendant intended to kill or to cause death.

■■ ■ Palomo also contends that he was denied effective assistance of counsel at trial because defense counsel failed to call two witnesses who could have impeached the State's chief witness, Wally Cruz, and because counsel failed to object to the jury instructions on attempted murder. To show ineffective assistance of counsel, defendant must demonstrate that his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different if his attorney had not made the unprofessional errors. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) The issue of counsel's competency is to be determined from a consid-

eration of the totality of counsel's conduct, not isolated incidents. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270, *cert. denied* (1985), 470 U.S. 1089, 85 L. Ed. 2d 153, 105 S. Ct. 1857.) A reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. (*People v. Miller* (1983), 120 Ill. App. 3d 495, 457 N.E.2d 1373.) Proof of prejudice resulting from incompetency of counsel cannot be based on mere conjecture. *People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d 795.

We are not persuaded that, judged by an objective standard, defendant's counsel was incompetent or that defendant was substantially prejudiced by errors of his counsel at trial. We perceive defense counsel's decision not to call two witnesses to attempt to impeach the testimony of Wally Cruz as an exercise of professional discretion and trial strategy. With respect to the failure to object to the attempted murder instruction, we do not believe that the instruction was erroneous, and therefore find no merit in the incompetence of counsel contention.

For the reasons stated, the convictions and sentences of the circuit court of Cook County are affirmed.

Judgments affirmed.

O'CONNOR and QUINLAN, JJ., concur.