THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WAYNE LAYHEW, Defendant-Appellant.

Fifth District    No. 5—87—0534

Opinion filed November 21, 1989.

CHAPMAN, J., specially concurring.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon,
and Lori Lanciani Mosby, of State Appellate Defender's Office, of Spring-
field, for appellant.

Frederick Turner, Jr., State's Attorney, of Golconda (Kenneth R. Boyle, Stephen E. Norris, and Ellen Eder Irish, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

Defendant was tried by jury in Pope County and convicted of aggravated criminal sexual assault.

The jury was not instructed in writing, at the close of the case, that defendant was presumed innocent and that the State had the burden of proving his guilt beyond a reasonable doubt. Defendant neither requested nor tendered the instruction. However, during *voir dire* the prospective jurors were questioned on both concepts, and the jurors were reminded of both concepts in closing arguments; nevertheless, we reverse and remand.

The instruction reads:

"Defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence." Illinois Pattern Jury Instructions, Criminal, No. 2.03 (2d ed. 1981).

Defendant argues the failure to instruct on presumption of innocence and burden of proof requires reversal of conviction.

The State replies that the jury was told throughout the proceedings that defendant was presumed innocent and the State had the burden of proving his guilt beyond a reasonable doubt; therefore, the jury was sufficiently informed of these legal principles and the need for a formal, written instruction averted.

In deciding between these arguments, we are not writing upon a clean slate. A like issue has been decided previously, but on constitutional grounds. *People v. Cage* (1986), 146 Ill. App. 3d 726, 497 N.E.2d 386, *appeal denied* (1986), 113 Ill. 2d 562; *People v. Williams* (1983), 120 Ill. App. 3d 900, 458 N.E.2d 1312; *People v. Carpenter* (1981), 101 Ill. App. 3d 792, 428 N.E.2d 983; *People v. Donald* (1974), 21 Ill. App. 3d 696, 315 N.E.2d 904; *People v. French* (1972), 5 Ill. App. 3d 908, 284 N.E.2d 481; *People v. Ayala* (1986), 142 Ill. App. 3d 93, 491 N.E.2d 154.

Each of these cases decided whether the failure to give the instruction deprived defendant of a fair trial guaranteed by the United States Constitution. Each decision necessarily involved an examination of the record and an evaluation of whether the failure to give the instruction in light of the totality of the circumstances had deprived defendant of a fair trial. This approach is permissible insofar as the United States Constitution is concerned, because the guarantees of the United States Constitution do not require giving the presumption of innocence instruction in every case. Rather, the totality of the circumstances is assessed on a case-by-case basis. *Kentucky v. Whorton* (1979), 441 U.S. 786, 60 L. Ed. 2d 640, 99 S. Ct. 2088.

We are struck, however, by what we feel is obvious. Under this approach, any decision by an appellate court not only will be fact specific, and therefore, of diminished precedential value, but will depend also on the value judgments of courts whose beliefs and composition may be subject to change.

Recitation of the facts of this case is illustrative.

In this case, before *voir dire* the circuit judge told the array of prospective jurors that defendant was presumed innocent, and that the State had the burden of proving him guilty beyond a reasonable doubt, but the circuit judge continued and said, "after all the evidence and the argument of counsel, the court will at that time instruct the jury in writing as to law applicable to the case."

In *voir dire*, the court queried the prospective jurors if they had any prejudice against the defendant simply because he was charged with the crime. Each was urged to be fair and to apply the law without bias or prejudice. Each was questioned if he had "any quarrel with the concept that the defendant is innocent until proven guilty." The 12 selected had satisfied the court and counsel by their answers.

In closing argument, the prosecution said, "As the defendant sits here right now, he is viewed as being not guilty. It is the State's burden to prove him guilty."

To complete the illustration, if we were to decide this case on United States constitutional grounds, we would say·that all the admonitions given in this case were negated when at the close of the case the court read to the jury Illinois Pattern Jury Instruction No. 1.01(2) which said, "[t]he law that applies to this case is stated in these instructions and it is your duty to follow all of them." (Illinois Pattern Jury Instructions, Criminal, No. 1.01(2) (2d ed. 1981)). As the colloquialism "the little print takes away the big print" is sometimes true, likewise here the written instruction diminished the impact of the oral admonition. The scheme in which the pattern instructions are written,

as well as our own experiences as trial lawyers, and trial judges, all would lead us to believe that most likely the written instruction would always work to take away the oral admonitions. We do not say all this, however, because we do not decide this case on United States constitutional grounds. But, we must say, in order to be candid, that we recognize that different courts might give different results in this case if they were to decide according to the method of analysis that proceeds under the United States Constitution, and cases growing out of *Kentucky v. Whorton.*

We need not, however, add to the hodge-podge of decisions. We can avoid adding to the number of cases reviewed; we can avoid further cluttering the reports of decisions; we can give clear directions to circuit courts, if we avoid constitutional-fact analysis and make a directive to the circuit courts of the fifth district. In so doing we are completing what we did not do in *People v. French* (1972), 5 Ill. App. 3d 908, 284 N.E.2d 481. Whereas, in that case we did not reach the question of whether it is reversible error to fail to give this instruction in any case, in this case we do reach that question.

■■ We, therefore, make a directive for the circuit courts of the fifth district: The presumption of innocence and burden of proof instruction must be given in the fifth district, in all criminal cases, formally, in writing, and at the close of the case, whether tendered or requested.

To the close readers of opinions, we do not encourage hair-splitting by this decision. We stress that there is no distinction to be made. We do not imply that a different result could be expected in some future case if the written instructions were not to take away oral admonitions like these that had been given before *voir dire*, during *voir dire*, and in closing arguments here. Quite the contrary, we have made a directive that is to be followed in all circumstances.

■■ The State has argued that defendant's failure to request the instruction, failure to tender the instruction and the failure to object to the instructions given operate as a waiver. We hold that this error is grave, contrary to the State's argument, and therefore, we are unable to find waiver in defendant's failure to tender the instruction, or his failure to object to the instructions given, or from his failure to include the error in his post-trial motion. We base our findings of grave error on our own experiences. The error is fraught with danger. The danger is apparent. This is an experienced trial judge we reverse. We cannot know what was in his mind, but if he did not give the instruction, then what might a less experienced judge do? We can guarantee protection of defendants' rights by this directive. Let this instruction be one of

the rubrics in the liturgy of a criminal trial, and no one, defendant included, need evermore worry about a jury being ignorant of the presumption of innocence and burden of proof, or otherwise misunderstanding these concepts that are so cherished by Americans.

The high value we, as a people, place upon these concepts has caused the committee note to this instruction to say it must be given in *all* cases, because it embodies the "touchstone of American criminal jurisprudence." (Illinois Pattern Jury Instructions, Criminal, No. 2.03 (2d ed. 1981).) Our holding in this case makes mandatory that which the committee has suggested.

Although we do not reverse because of it, nevertheless one more issue needs to be addressed: notetaking. Notetaking by the jury is an entitlement conferred on jurors by statute. "The members of the jury shall be entitled to take notes during the trial, and the sheriff *** shall provide them with writing materials ***." Ill. Rev. Stat. 1987, ch. 38, par. 115—4(n).

The circuit court, the State's Attorney and the defense attorney in this case agreed that the jury would not take notes. Notes, of course, were not taken in consequence of that stipulation. Defendant has raised the failure to allow the jurors to take notes as an issue on appeal. The State has replied that because defendant agreed that jurors would not take notes, he cannot raise it on appeal. The State is wrong.

■ Defendant's agreement was a nullity. The statute confers nothing on defendant. The jurors are the beneficiaries of the entitlement. Defendant had no standing to stipulate away that which was not his.

■ On consideration of the merits of the issue, we find that the statute uses the word "shall," which ordinarily is mandatory. We find, therefore, that notetaking is a statutory entitlement of jurors; it cannot be denied by the trial judge or waived by counsel. (*Cf. People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416.) Furthermore, that entitlement will be always unfulfilled, unless courts ensure it is bestowed on each jury. That can only be done by physically ensuring that all jurors are provided note pad and pencil for their use, if they so desire.

This case is reversed and remanded.

Reversed and remanded.

RARICK, J., concurs.

JUSTICE CHAPMAN specially concurring:
I concur in the result reached by the majority, but I am troubled by

its careful avoidance of any discussion of the basis for its ruling; it cites not a single case and it refers to no statute. Most importantly, it repeatedly asserts that the holding is not based on any provision of the United States Constitution. To this last assertion I would reply that the repetition of a statement does not make it any more true, contrary to the cries of the butcher in *The Hunting of the Snark*:

" 'As the Bellman would tell you,' he added with pride, 'I have uttered that sentiment once.'

'Tis the note of the Jubjub! Keep count, I entreat, You will find I have told it you twice.

'Tis the song of the Jubjub! The proof is complete, If only I've stated it thrice.' " L. Carroll, *The Hunting of the Snark*, in Logical Nonsense, The Complete Works of Lewis Carroll, at 279 (1942).

The majority apparently finds itself in a quandary; if it states that its holding is based upon the due process clause of the United States Constitution, then it would not be able to reach its decision because *Kentucky v. Whorton* (1979), 441 U.S. 786, 60 L. Ed. 2d 640, 99 S. Ct. 2088, holds that failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution, but that such a failure must be evaluated in the light of the totality of the circumstances in the case.

It seems to me, however, that by going to the other extreme and deciding to make its decision a part of the court-made law of this district, the majority must suffer the criticism of Justice Black, dissenting in *Linkletter v. Walker* (1965), 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731, when he stated: "The inference I gather from these repeated statements is that the rule is not a right or privilege accorded to defendants charged with crime but is a sort of punishment against officers in order to keep them from depriving people of their constitutional rights. *In passing I would say that if that is the sole purpose, reason, object and effect of the rule, the Court's action in adopting it sounds more like law-making than construing the Constitution.*" (Emphasis added.) *Linkletter*, 381 U.S. at 649, 14 L. Ed. 2d at 620, 85 S. Ct. at 1748 (Black, J., dissenting).

Finally, I would refer the majority to its comment that the " 'little print takes away the big print.' " (191 Ill. App. 3d at 594.) I would then ask it to examine its big-printed holding that there is no constitutional basis for its decision with its small-print statement that "[w]e can guarantee protection of defendants' rights by this directive." (191 Ill. App. 3d at 595.) If there is truly no constitutional basis for its decision, then what is the basis of the defendants' rights that the majority

is so desirous of protecting?

The constitutional basis in any decision in this case cannot be denied. Both the United States Supreme Court and our own State supreme court have held that the reasonable doubt standard is of constitutional dimension. In *In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073, the Supreme Court stated:

> "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

In *People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28, our supreme court, in discussing the appropriate standard for commitment under the Sexually Dangerous Persons Act, stated that "[t]he requirements of due process, under both the United States and Illinois constitutions, mandate that the drastic impairment of the liberty and reputation of an individual which results from civil commitment under the Sexually Dangerous Persons Act be justified by proof beyond a reasonable doubt." *Pembrock*, 62 Ill. 2d at 321, 342 N.E.2d at 29.

In my judgment there are other and more appropriate ways to reach the proper result which the majority has reached. First, with regard to this case, under the totality of circumstances approach set forth by the United States Supreme Court in *Kentucky v. Whorton*, when the jury is told in the written instructions that "the law applicable to this case is contained in these instructions," and when those instructions do not inform the jury of the reasonable doubt standard and the presumption of innocence, I would hold that the defendant was deprived of due process under either the United States or the Illinois Constitution. Alternatively, and with regard to future cases, I would hold that the due process clause, article I, section 3, of the Illinois Constitution *requires* that the reasonable doubt-presumption of innocence instruction be given by the court in writing at the close of every criminal case.

If the due process clause mandates that no one is to be deprived of liberty unless the presumption of innocence is overcome by proof beyond a reasonable doubt then the jury must be properly advised of the standard under which it may convict. The failure to advise is reversible error in any case and I would so hold.

For the above reasons I concur in the result reached by the majority.