THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARVIN STRONG, Defendant-Appellant.

First District (1st Division)   No. 1—93—1856

Opinion filed July 24, 1995.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Celeste Steward Stack, and Michael F. Bonaguro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant was found guilty on a theory of accountability of armed robbery (720 ILCS 5/18—2 (West 1992)). He appeals his conviction, arguing that: (1) the trial court's policy of prohibiting jury note taking violates the Code of Criminal Procedure of 1963 (725 ILCS 5/100—1 *et seq.* (West 1992)), prejudiced him as evidenced by the jury note sent during deliberations, and warrants a new trial; (2) the trial court erred in denying defendant's motion to suppress identification testimony; and (3) the prosecutor's misstatement of the law during closing argument warrants a new trial.

The victim, Homer Verden, testified that on February 20, 1992, at approximately 12:30 p.m., he and a friend were on their way home from the mall. They were walking on the north side of Washington Boulevard at approximately 5200 west. Verden saw a blue four-door Ford parked on the same side of the street. Three individuals were standing outside the car. The individuals asked Verden and his friend to get out of their jackets. Verden was wearing a red, white, and black leather and suede jacket with a hood. Verden asked "What?" and the individuals began unbuttoning the jacket. Two of the men left Verden and went over to his friend, who started to fight over his jacket. The individual with Verden took his jacket and jumped into the car. He told the other two to get in the car because they had Verden's jacket. Verden stated that at some point while the individuals were trying to take his jacket, a fourth individual got out of the back seat of the car with a police stick and tried to hit Verden in the knees and lower legs. After the men got back into the car, it drove away very fast. When it began to leave, Verden looked into the car and saw the side of defendant's face. Defendant was the driver. Verden stated that the incident lasted three to five minutes and occurred right next to the car. At defendant's trial, Verden identified defendant as someone he "believed" was outside the car but said that he "can't recall it up to date."

After the incident, Verden called the police and told them about the robbery. He gave a description of the type and color of car and also the license plate number. When the police came to his sister's house, they showed him a driver's license of defendant. Verden did not remember if the police asked him if he recognized the individual. He stated that the police merely asked if he "would be able to remember his face when I come to claim my jacket." At the hearing on defendant's motion to suppress identification, Verden stated that the police asked if "[he could] identify this person, would [he] remember his face when [he] came down to the station, and [Verden] said yes." Verden went to the police station, viewed a lineup, and

identified defendant. Prior to viewing the lineup, Verden saw defendant and another individual pass them.

Officer Fassett testified he and his partner were on patrol on Lotus at approximately 12:30 p.m. and noticed a blue car driving eastbound on Quincy without a front license plate. The officers stopped the car. There were five individuals in the car. Officer Fassett asked defendant for his driver's license, had everyone get out of the car, and put their hands on the back of it. The officers then conducted a pat-down of each individual. While the officers were conducting the pat-down, a radio message stated the police were looking for a blue four-door car with license plate SL 1772 because the occupants had committed an armed robbery. Officer Fassett stated that after the broadcast, all of the individuals started to run, including defendant. However, because he was searching defendant, defendant was unable to escape. Fassett immediately handcuffed defendant and the other individual who did not get away. The officers found Verden's jacket and a police baton in the back seat of the car; however, they left the items in the car because they had no idea they were connected to the robbery.

Assistant State's Attorney Karen Limperis testified that she spoke with Verden at the police station and also with defendant. Prior to speaking with defendant, she advised him of his rights and asked Detective Rickher to leave for a moment. After the detective returned, defendant gave a statement. He told Limperis he was the driver of the car and there were at least two other individuals in the car, possibly more. He was driving them to purchase drugs. The other individuals spotted the victims and said they wanted to rob them of their jackets. They got out of the car, overpowered the victim, and took his jacket. They then got back into the car and defendant drove away. Defendant told Limperis he did not wish to reduce his statement to writing and her account of defendant's statement is based on notes she took during the interview.

Detective Rickher was assigned to investigate the robbery. He spoke with the victims and investigating officers. Subsequent to the lineup, he also spoke with defendant. In his first conversation with defendant, defendant told him he was driving the car but had nothing to do with the robbery. Defendant stated he did not understand what transpired and had no foreknowledge of the robbery. In the second conversation, defendant stated he knew exactly what was going to happen and had full foreknowledge the individuals were going to rob the victims. He stated he went along with it out of fear. In the third conversation which was conducted by Limperis, defendant made it absolutely certain he was aware prior to the robbery that it was going to occur.

Defendant testified on his own behalf. He was employed by T-Force Security at the Chicago Housing Authority projects. On his days off, he operated as a cab service to earn extra money. He was not employed by a cab company and did not have a license or registration to operate as a cab driver. He met his fares at the Jackson store.

On the date in question, at approximately 11 a.m. he was sitting at Jackson Foods on Campbell and Jackson. A guy came up to his car and asked him to take him somewhere for $4. Defendant knew the guy by his nickname, "Marvin," but was not friends with him. He had driven Marvin once before. Defendant agreed to take Marvin and three other guys got in the car with Marvin and defendant. Defendant did not know the other men. He took them to 5600 West Washington, where one of the individuals went into an apartment building and came back 5 to 10 minutes later. As they were driving back to the store, the individuals told defendant to pull over. When defendant stopped, three of the occupants got out. Defendant stated he just looked ahead. The individuals then jumped back into the car and told defendant to pull off. They stated they had just robbed someone. Prior to this time, defendant denied there was mention of a robbery.

As defendant drove away, he drove past a police car which pulled him over. Defendant got out and gave the police his driver's license. The police then told everyone to get out of the car. All of the occupants stood at the rear of the car with their hands on the trunk. Defendant denied hearing the radio message and denied he attempted to run along with the others. The police took defendant to the victim's home and showed the victim his license. After the police exited the house, they took him to the police station where he was put in a lineup.

Defendant denied telling Detective Rickher he was part of the robbery and denied knowing the other individuals. He said he was "just a can person" and trying to make extra money. He denied telling the assistant State's Attorney he knew about the robbery before it occurred and denied ever getting out of the car.

On cross-examination, defendant denied he spoke with the individuals on the way to their stop and denied he ever saw the back seat occupants carrying anything in or out of the car. He stated he was not paying attention to them. He also stated he did have a front license plate on his car. Defendant denied that the police or the assistant State's Attorney read him his rights, denied telling the assistant State's Attorney he was driving the guys to buy drugs, denied telling the assistant State's Attorney the individuals talked about the robbery before it occurred, and denied that the assistant State's Attorney asked Detective Rickher to leave the room for a moment.

Prior to trial, defendant's motion to suppress identification testimony was denied. He was found guilty of armed robbery by a jury. After denying defendant's post-trial motion for a new trial, the court sentenced defendant to seven years' imprisonment. He filed this timely appeal.

Defendant first argues that the trial court committed reversible error in denying the jurors the ability to take notes during trial. He argues that this practice violates the explicit language of section 115—4(n) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—4(n) (West 1992)). Defendant contends he was prejudiced by this denial where the jury was unable to sufficiently recall the crucial testimony of Verden when evaluating defendant's guilt or innocence. The jury's difficulty was evidenced by the note it sent out during deliberations which stated: "Is it possible to get a transcript of Homer Virden's [*sic*] testimony."

The State contends defendant has waived this issue because he failed to object at trial. Further, it is not plain error because defendant has not shown prejudice; a mere single juror asked for the transcript, which is a common request, and defendant did not object when the trial court declined to send the transcript to the jury. Defendant has not shown the request would not have been made even if the jury had been permitted to take notes. If we decide to address the merits, the State argues that the statute is directive and allowing note taking is within the discretion of the trial court. Moreover, the legislature did not intend an entire criminal proceeding would be void if a jury is denied the opportunity to take notes where no such outcome is dictated by the statute. There is no evidence the legislature intended that juries, as a matter of right, could take notes. Finally, even if the trial court erred, the error was harmless because of the overwhelming evidence of guilt against defendant.

■ Defendant has not waived this issue. First, the waiver rule is relaxed when a trial judge's conduct is at issue and the basis for the objection. (See *People v. Anderson* (1992), 262 Ill. App. 3d 349, 353, 633 N.E.2d 699, 701-02; *People v. Jackson* (1993), 250 Ill. App. 3d 192, 202, 620 N.E.2d 1239, 1246; *People v. White* (1993), 249 Ill. App. 3d 57, 60, 618 N.E.2d 889, 892; *People v. Brown* (1990), 200 Ill. App. 3d 566, 575, 558 N.E.2d 309, 314.) Because the judge, at the time of the alleged error, was communicating to the jury and defendant included it in his post-trial motion, we address the merits.

■ The statutory provision at issue states:

"(n) The members of the jury shall be entitled to take notes during the trial, and the sheriff of the county in which the jury is sitting shall provide them with writing materials for this purpose.

Such notes shall remain confidential, and shall be destroyed by the sheriff after the verdict has been returned or a mistrial declared." (725 ILCS 5/115—4(n) (West 1992).)

This issue appears to be a case of first impression. Although the Illinois Appellate Court in *People v. Layhew* (1989), 191 Ill. App. 3d 592, 548 N.E.2d 25, found the provision was an entitlement of jurors which could not be denied by the trial court or waived by counsel, the supreme court reversed this ruling and held that even though this may be a right which inures to the juror, the defendant failed to object at trial and in his post-trial motion and, therefore, waived the issue for review. (*People v. Layhew* (1990), 139 Ill. 2d 476, 564 N.E.2d 1232, *rev'd & remanded* (1989), 191 Ill. App. 3d 592, 548 N.E.2d 25.) No published case since *Layhew* has addressed the section.

■ Whether a statutory provision is mandatory or directory hinges upon the drafters' intent. A significant aid in interpreting a provision is the verb. Generally, "shall" is indicative of a mandatory intent. However, this rule is not inflexible and we may interpret a statute using "shall" as permissive if the context and intent of the drafters so dictate. *People v. Youngbey* (1980), 82 Ill. 2d 556, 562, 413 N.E.2d 416, 419-20.

■ The legislative debates surrounding this paragraph support a conclusion that the language is mandatory, not permissive. Although the State quoted some of the legislative materials, it failed to include the following colloquy which is on point and instructive:

"This Bill deals with jurors. The current statute indicates that we *can not prohibit* the taking of notes by jurors, in both civil and criminal cases. So the purpose of this Bill is to expand upon that slightly, and to say that the sheriff, of the county in which the juror's serving, shall be the one to provide the writing materials for that purpose. *** So the purpose of this Bill is to define, give a little more flesh to *this right of a juror to take notes*, to make it clear that these notes will be destroyed after a verdict." (Emphasis added.) (83d Ill. Gen. Assem., House Proceedings, April 5, 1983, at 31 (statement of Representative Cullerton).)

During the Senate debates, the following statements were made, which the State ignored in quoting the legislative history: "[U]nder the current law they [jurors] *can't be prohibited* from taking notes, all this does is we supply the paper and pencil and they take notes ***." (Emphasis added.) (83d Ill. Gen. Assem., Senate Proceedings, June 20, 1983, at 81 (statement of Senator Lemke).) This last statement was made in response to a question from Senator Sangmeister, who expressed his concern and lack of willingness to alter the rule disallowing jurors to take notes:

"For time immemorial, the reason that juries were not allowed to take notes was so that they would concentrate on the trial and not go off on a tangent \*\*\*. That's the reason that juries have never been allowed to take notes, and I don't know why we want to change that now." 83d Ill. Gen. Assem., Senate Proceedings, June 20, 1983, at 81 (statement of Senator Sangmeister).

Based on the above, we find the section is mandatory and the trial judge erred in prohibiting the jurors from taking notes. However, the error is harmless in light of the overwhelming evidence of defendant's guilt.

Defendant's second argument is that the trial court erred in denying defendant's motion to suppress identification testimony. Specifically, he contends that three errors occurred: the trial court had a preconceived attitude against suppression; the trial court failed to recall key victim testimony that the police advised the victim that he must make an identification before he would be able to recover his jacket and, therefore, the victim had a motive to make an identification in the lineup; and the lineup was so unnecessarily suggestive because it was preceded by showing the victim a single photograph of defendant which resulted in a substantial likelihood of misidentification and the State failed to prove the in-court identification was based on independent bases.

The State counters each of the allegations. As to the trial court's preconceived attitude, the State makes several arguments. First, defendant waived this issue by failing to include it in his post-trial motion. Nonetheless, it contends there was no evidence which showed bias or prejudice on the part of the trial court. The record does not show the trial court prejudged the suppression issue and, in fact, the record demonstrates it listened to all of the evidence before making its ruling. Second, the testimony which the trial court limited was irrelevant to the issue before it. The only issue at the hearing on the motion to suppress was the suggestiveness of the identification, *e.g.*, the composition of the lineup and the single-photograph showup. The testimony defendant sought to introduce went to the issue of independent basis and was not relevant at this point. It only becomes relevant after defendant meets his burden which he failed to do. Finally, the officer's testimony which was precluded was cumulative.

As to the trial court's failure to recall the victim's testimony, the State argues this issue is waived because the defendant failed to raise it in his post-trial motion. As to the merits, the State asserts that defendant mischaracterizes and misconstrues the testimony given by the victim. According to the State, both the victim's testimony and Officer Fassett's testimony fail to show that the lineup identification

was a precondition to recovery of the victim's jacket. Therefore, defendant's argument is without merit.

As to the suggestiveness and independent basis, the State argues that defendant's analysis is erroneous because he addresses the State's burden without addressing his burden first: the suggestiveness of the identification. Because defendant failed to argue why the single-photograph showup was suggestive, he has waived this issue on appeal. It further contends that the single-photo showup was not unnecessarily suggestive and that the police acted properly. Even if we find the lineup identification suggestive, the State contends it met its burden of showing the victim had an independent basis for his in-court identification based on all the circumstances evident in the record. Finally, it contends that any error was harmless because defendant's defense at trial was lack of knowledge and not misidentification. Therefore, the identification of defendant was irrelevant to his defense because he conceded that he was present at the scene.

■ We agree with the State that defendant has waived this issue for failing to include it in his post-trial motion. (*People v. Kitchen* (1994), 159 Ill. 2d 1, 33-34, 636 N.E.2d 433, 447.) Even if we were to address defendant's arguments, they are without merit. There is no evidence in the record showing a preconceived attitude or bias on the part of the trial court. The court listened to all of the evidence and weighed it in rendering its decision to deny the motion to suppress. In addition, although the statements of Verden and the police are not perfect examples of draftsmanship, they do not demonstrate that Verden was required to identify defendant in a lineup before recovering his jacket. Finally, defendant has failed to show, under a totality of the circumstances, that the single-photograph showup was suggestive or that the lineup was improper based on this showup and, therefore, there is no need to address whether the State met its burden. (*People v. Kelly* (1989), 185 Ill. App. 3d 43, 540 N.E.2d 1125.) Based on the above, we affirm the trial court's denial of defendant's motion to suppress identification.

Finally, defendant argues he was prejudiced because of the State's misstatement of the law during closing argument: defendant did not stop his companions from robbing the victim. Specifically, three errors occurred: the court overruled a proper defense objection; the court misled the jury by stating that defense counsel was making an "improper" objection; and the court approved of and misled the jury by stating the State was making a proper argument. Defendant contends prejudice is shown by the jury note during deliberation stating, "In the third proposition that the State must prove does the phrase 'at the time of the taking' mean the actual taking of the jacket or the time of the whole incident?"

The State asserts defendant mischaracterizes its closing argument. The State did not say defendant owed an obligation or duty to the victim to stop the robbery. It was attacking the credibility of defendant's version of the events and arguing his version was incredible; there is no way he would not have known the robbery was occurring given the circumstances. In addition, the State contends that if any error occurred it was harmless because it is not likely that the jury predicated its verdict upon the fact defendant should have done something to stop the robbery.

■ A prosecutor is permitted great latitude in closing argument and the trial court is in the best position to determine its propriety. Thus, we must indulge every reasonable presumption that the trial court properly exercised its discretion. Reversal is not required unless the remarks constitute a material factor in defendant's conviction; if the jury would have reached the same verdict even had the improper remarks not been made, no error results. *People v. Benson* (1994), 266 Ill. App. 3d 994, 1003, 641 N.E.2d 617, 624.

We find no error. The State argued, "After he doesn't get out of the car and stop this incident—."

It is unlikely the jury put much emphasis on this statement or based its determination of defendant's guilt upon it. It is also likely that the jury would not have reached a different decision had the comment not been made. The jury sent out a note focusing on the time of the taking, not on defendant's obligations or duties toward the victim. Finally, the trial court instructed the jury that closing arguments were not evidence, which substantially cured any error. (*People v. Thomas* (1994), 266 Ill. App. 3d 914, 641 N.E.2d 867.) Therefore, we find no error in the statements, objections, or trial court's comments.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WOLFSON and BRADEN, JJ., concur.