# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2019 IL App (3d) 150352-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARREN JOHNSON, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-15-0352 |
| Filed | December 5, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 14-CF-254; the Hon. John L. Hauptman, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Gilbert C. Lenz, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Terry Costello, State's Attorney, of Morrison (Patrick Delfino, Lawrence M. Bauer, and Dawn Duffy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Carter and Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1        On July 22, 2014, Rock Falls police arrested defendant, Darren Johnson, for shoplifting $76.91 worth of clothing from a local Walmart. The State charged defendant with retail theft and burglary. After his first trial resulted in a hung jury, a second jury acquitted defendant of retail theft but convicted him of burglary. The Whiteside County circuit court sentenced defendant to eight years in prison. We reverse and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3        The State charged defendant by information with burglary and retail theft on July 23, 2014. Defendant waived his right to counsel on August 26. His first trial resulted in a hung jury on October 22. His second trial began on November 18. Before opening statements, the trial court prohibited the jury from taking notes. The judge told the jury: "I do not allow note taking ***. I am a firm believer *** in the collective memory of the jury. *** [A]nd I do not want you to be distracted by note taking."

¶ 4        During the State's case, Amanda Peppers testified that she saw defendant and another man inside the Rock Falls Walmart on July 22, 2014, while she was shopping with her nephew. The two men "were kind of walking around with a bunch of stuff in their hands," and "they would kind of veer off in other directions" when Peppers approached them. As she left the store and walked to her car, Peppers saw the two men retrieve backpacks from behind vending machines outside the store's entrance. The men removed stolen items that they concealed in their clothes and placed them in the backpacks. Peppers called the police.

¶ 5        Before police arrived, Peppers saw the men walk toward a Coinstar machine in the store's vestibule. After the men briefly reentered the store without their backpacks, Peppers saw defendant exit the store, retrieve his backpack, and walk toward the parking lot.

¶ 6        Officer James Hollaway of the Rock Falls Police Department testified that he responded to Peppers's call with Sergeant John Worcester and Officer Jarrett Ludwig at 7:16 p.m. While Worcester and Ludwig walked toward the store's entrance, Hollaway sat in the parking lot and observed defendant retrieve his backpack from atop the Coinstar machine before he walked toward the parking lot. Hollaway stopped defendant to ask him if he took items from the store without paying for them; defendant lowered his head and answered "yes."

¶ 7        Ludwig testified that he escorted defendant to the manager's office inside the store. He read defendant his *Miranda* rights with Worcester and Donna Courtney, the Walmart manager, present. Ludwig searched defendant and found 14 items of girls' clothing in his backpack and on his person.

¶ 8        Courtney testified that defendant told her he took the clothes because his ex-girlfriend prohibited him from seeing their daughter unless he bought her school clothes. Courtney described defendant as "very distraught." He offered to clean the windows, clean the floor, or provide whatever labor necessary to repay the store for the stolen clothes. Courtney processed a receipt showing the stolen items' retail value totaled $76.91.

¶ 9        She also copied footage from six surveillance cameras onto a digital versatile disc (DVD). None of the cameras covered the girls' clothing section. The State played portions of the DVD that contained footage from four of the six cameras. In relevant part, the video showed defendant entering the vestibule area, placing a backpack on the Coinstar machine, and

retrieving his backpack when he left the store. Defendant elected not to testify on his own behalf.

¶ 10     During the first day of deliberations, the jury sent the court four notes. The first note requested to see Peppers's written police statement (which the State did not admit into evidence) and to review Courtney's DVD. With the parties' consent, the court declined the jury's requests. The second note requested Ludwig's police report. The court declined the jury's request without objection. The third note reported that the jury reached a verdict on one charge but remained split on the other.

¶ 11     The jury's final note reported that the jury reached an impasse; the jury again requested to review Courtney's DVD to help resolve the deadlock. Without objection, the court again declined the jury's request to review the DVD. The court also issued a *Prim* instruction (see *People v. Prim*, 53 Ill. 2d 62, 71-76 (1972)). At 10:20 p.m. on November 19, the court sent the jury home.

¶ 12     Proceedings resumed at 9 a.m. the following morning. At 10:30 a.m., the jury returned its verdict. It found defendant not guilty of retail theft but guilty of burglary. The court appointed posttrial counsel pursuant to defendant's request.

¶ 13     The court denied defendant's posttrial motion before his sentencing hearing on March 27, 2015. Although burglary is a Class 2 felony with a three-to-seven-year sentencing range (720 ILCS 5/19-1(b) (West 2014); 730 ILCS 5/5-4.5-35(a) (West 2014)), the court sentenced defendant as a Class X offender because his criminal record contained prior theft and burglary felony convictions within 20 years. 730 ILCS 5/5-4.5-95(b) (West 2014). The court sentenced defendant to eight years in prison. It denied defendant's motion to reconsider his sentence on May 13, 2015.

¶ 14     On appeal, defendant raised four challenges. The first two challenges attacked the sufficiency of the State's evidence on both burglary elements—entering the store without authority and intending to commit theft therein (720 ILCS 5/19-1 (West 2014)). Defendant also sought a new trial because the court violated section 115-4(n) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4(n) (West 2014)) when it prohibited jurors from taking notes during trial. Finally, he asks this court to reduce his monetary assessments from $557 to $490 because the trial court "failed to grant the mandatory $5-per-day credit against three [assessments]."

¶ 15     Before we address defendant's arguments, we must provide further procedural history. In our prior decision, we reversed defendant's burglary conviction, finding that, even assuming defendant entered the store without intent to shoplift, defendant was not guilty of burglary. 2018 IL App (3d) 150352, ¶¶ 25-36. We did not reach defendant's three remaining issues. *Id.* ¶¶ 14, 38. The supreme court reversed and remanded the case, directing us to address the remaining issues. *People v. Johnson*, 2019 IL 123318, ¶ 47. And so we do.

¶ 16                                  II. ANALYSIS

¶ 17                                  Juror Note Taking

¶ 18     Defendant argues that the trial court committed reversible error by refusing to allow jurors to take notes. Before opening statements, the trial court told the jury:

       "I, I do not allow note taking and I have a, I have a reason for this. I am a firm believer in the ability of jurors to remember the testimony and I, I am a firm believer

in the collective memory of the jury. That's why we have 12 people, I mean it's, it's meant to be give and take and that sort of thing, and my concern about taking notes is that sometimes people are so busy concentrating on taking, on writing down what was said that they may miss something else that was said. Or, somebody might be worried that, well, this lady or this man took better notes than me. Well that's what the whole process is about, is to work through these things collectively, and I do not want you to be distracted by note taking."

¶ 19 Section 115-4(n) of the Code states, *inter alia*: "The members of the jury *shall* be entitled to take notes during the trial, and the sheriff *** shall provide them with writing materials for this purpose." (Emphasis added.) 725 ILCS 5/115-4(n) (West 2014). This statutory provision is mandatory. *People v. Strong*, 274 Ill. App. 3d 130, 135-37 (1995). It is a measure to protect defendants' constitutional rights to fair trials. It is also the jurors' right. See *People v. Layhew*, 139 Ill. 2d 476, 492-93 (1990). Trial courts lack discretion to ignore this direct mandate.

¶ 20 We must still decide whether this error was harmless or denied defendant a fair trial. See *Strong*, 274 Ill. App. 3d at 135-37. In *Strong*, the reviewing court found the error to be harmless because only one juror requested to see the trial transcript and the evidence of the defendant's guilt was "overwhelming." *Id.*

¶ 21 That is not the case here. Jury deliberations took several hours. The jury submitted four notes requesting to review evidence. One note stated the jury was "deadlocked without reviewing the evidence." By the jury's own description, it did not find defendant's guilt "overwhelming." Instead, the jury could not reach a decision. The court's error was therefore not harmless beyond a reasonable doubt. It clearly impacted defendant's right to receive a fair trial. For this reason, we remand for a new trial. This disposition leaves us with no need to address defendant's other issues.

¶ 22                                    III. CONCLUSION

¶ 23 For the foregoing reasons, we reverse the judgment of the circuit court of Whiteside County and remand for a new trial.

¶ 24 Reversed and remanded.