SECOND DIVISION

May 10, 2005

No. 1-03-2260

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )               

)

WALTER NUNN,   ) Honorable

) William G. Lacy,

Defendant-Appellant. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court: 

Following a jury trial, defendant Walter Nunn was convicted of the second degree murder of Antonio Parks, aggravated battery with a firearm, and aggravated discharge of a firearm.
(footnote: 1)  The trial court sentenced defendant to 12 years' imprisonment for murder, a consecutive 18-year term for aggravated battery, and a concurrent 12-year term for aggravated discharge of a firearm.  

On appeal, defendant contends his convictions should be reversed because of several trial errors, including: (1) the exclusion of evidence supporting his defense; (2) the trial court's failure to instruct the jury on the presumption of innocence; and (3) improper statements by the prosecution during closing arguments.  Defendant also contends he received ineffective assistance of trial counsel and that his conviction for aggravated discharge of a firearm violated the one act, one crime rule.  We affirm the second degree murder and aggravated battery with a firearm convictions, and we vacate the aggravated discharge of a firearm conviction.

FACTS

At trial, Deanna Parks testified she was Antonio Parks' mother.  Her son was shot and killed on April 17, 1999.

Lisa Sims testified she was with the victim on the night he was killed.  On April 17, 1999, Sims rode with Parks to a liquor store at 103rd and Wentworth Streets in Chicago.  Sims waited in the car while Parks entered the store.  He returned 10 minutes later, carrying only a bag.  Parks got into the car, started the engine, and began to drive forward.  At that point, the car's rear window shattered.  Sims turned and saw Jamel Miller standing by the driver's side window.  After seeing Miller, Sims looked out the back window but did not see anyone.  She did not see Nunn fire any shots, but Miller fired a black gun several times at the car.  One of the bullets hit Sims in the stomach.  As Sims ran from the car, she heard additional shots fired.  When she returned to the scene later, she found Parks lying on the ground.

Lilly Seals testified she knew both Nunn and Miller, his brother.  Both were members of the Gangster Disciples street gang.  Seals also knew Parks, who belonged to a different faction of the Gangster Disciples.  Seals was in the liquor store when Parks entered the store on April 17, 1999.  Parks was laughing and wrestling with Willie Boston, another gang member.  The store owner told everyone to leave, so Seals went to the restaurant next door.  She heard Parks arguing with someone in the street and heard several voices shouting back and forth.  When Seals heard gunshots, she looked out the restaurant's window and observed both Nunn and Miller shooting at Parks' car.

Donnell Davis testified he was Parks' friend and was at the liquor store on April 17, 1999.  Davis saw Parks "playing" or "wrestling" with Boston.  When everyone was asked to leave the store a few minutes later, Davis saw Nunn and Miller outside.  Parks and Boston were still arguing with each other, but Davis testified, "it was nothing serious."

Although Davis could not recall the details of the shooting at trial, he admitted giving police a handwritten statement describing the incident on July 6, 1999.  In his statement he said he saw Nunn retrieve a gun from under the porch of a nearby house.  Nunn walked over to Park's car and shot into the rear window of Parks' car.  Davis saw Miller walk to the driver's side window and shoot three times.  Davis never saw Parks with a gun that night, nor did he see any gunshots coming from inside the car.

Dr. Joseph Kogan, a forensic medical examiner, testified he reviewed Parks' autopsy report.  He believed Parks was leaning to his right side with his left hand extended when he was shot.  On cross-examination, Dr. Kogan admitted he could not be sure of Parks' position because he did not know the angle of the gun.

Kevin Noel testified that he bought a .380 chrome handgun from Nunn in Indianapolis in the summer of 1999.  Noel sold the gun to Warren Cornett, who was arrested on unrelated charges, and the police confiscated the weapon.  The police questioned Noel about the gun and about Nunn.  Noel identified the handgun at trial.  

On cross-examination, Noel admitted he was a drug dealer and was in custody at the time of trial.  He was brought from Indiana to testify.

The parties stipulated that Indianapolis police officer Roger Gammons would have testified the gun introduced as evidence at trial was the same gun he recovered from Cornett's car.

Peter Brennan, an expert in firearms identification, testified he examined the bullets recovered from the victim's body, a discharged .380 caliber bullet recovered from the sidewalk next to the victim's car, and several cartridge cases recovered from the scene, two from beside the car's front wheel and two from behind the car, were all fired from the gun in evidence.  A discharged .32 caliber bullet found in the car's back seat was fired from a different weapon.

Detective David Fidyk testified he and his partner transported Nunn to Chicago from a penal institution in Michigan City, Indiana, where Nunn was incarcerated.  When they reached the police station, Fidyk advised Nunn of his rights.  Nunn said he understood his rights and agreed to talk to the officers.  During their conversation, Nunn admitted his participation in the April 17, 1999, shooting.  He repeated his story to Assistant State's Attorney Jack Blakely, but did not say he was protecting his brother during the shooting.  Nunn chose to give a videotaped statement.  

The videotape was played for the jury.  In the video, Nunn said Miller told him about a gang dispute involving members from 108th Street, Parks' faction of Gangster Disciples.  Miller said the others were involved in a carjacking and blamed him for it.  On April 17, 1999, Nunn and Miller were standing outside the liquor store.  After Parks left the store, Miller asked Nunn to get a gun, so Nunn retrieved a .380 caliber gun from a vacant lot next to the store.  Nunn gave the weapon to his brother, watched his brother for a minute, then got a .32 caliber gun from under a nearby porch.  While Nunn was getting the guns, Parks was yelling and making his way back to his car.  Nunn did not see Parks holding a weapon.  Both Nunn and Miller approached Parks' car.  Standing behind the car, Nunn fired two bullets into the back window of the car.  Parks tried to drive away, but the car stalled.  Both Nunn and Miller ran from the scene and left for Indianapolis a few days later.  Nunn admitted he sold the .380 caliber handgun because he "didn't want to have the murder weapon in [his] possession if [he] got arrested."

Nunn also testified at trial.  He said that in 1999 he traveled from Indianapolis to visit Miller, his brother.  Miller told him that he and Parks had several altercations.  Parks had pulled a gun on Miller during a fight over a girl.  Another time Parks and his friends kicked in Miller's friend's door and assaulted him with guns because they were looking for Miller.  Miller told Nunn he was afraid he was going to get killed.

On April 17, 1999, after Parks left the liquor store, he began calling Miller and other people names and threatening that he was going to get his gun from his car.  Nunn testified Parks told his brother that "they always wanted to kill him and they should have [done] it when they had the chance to."  When Nunn heard Parks threaten his brother, he got a revolver that was hidden underneath an abandoned porch.  Miller continued to follow Parks to his car.  When Parks got to the car, Miller told Nunn to "look out," and Nunn fired twice at the car.  Although Nunn pulled the trigger five times, only two shells came out.  He then ran away.

Nunn recognized the handgun in evidence as the gun his brother used on the night of the shooting.  Miller forgot the gun at Nunn's house, so Nunn sold it.  

Nunn said his statement that he retrieved the gun his brother used was not true.  He also said he lied when he told police that he wanted to get rid of the gun because it was a murder weapon.  Nunn said he was not offered a choice other than a videotaped statement and was told to sign the consent form, even though he told police he did not want to give a statement.

Darryl Boston testified he saw Parks with a gun twice.  The first time Parks had a weapon tucked into his pants and asked Boston where Miller lived.  Boston also saw Parks with a handgun while driving on the expressway in April 1999.

Lunye Williams, a Chicago police officer, testified she lived near 103rd and Wentworth.  In February 1999, she met Miller at her home to ask him why someone knocked down her door looking for him.  Williams testified she did not know the name of the person who broke into her home.  Prior to Williams' testimony, defense counsel told the court Williams would testify that her sons told her it was Parks who broke into her home and the incident was tied to a carjacking.  The trial court told defense counsel such testimony was hearsay and was not admissible.

The jury found Nunn guilty of second degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm.

DECISION

I.  Alleged Trial Court Errors

A.  
Exclusion of evidence regarding victim's prior acts of
        
violence

Defendant contends the trial judge erred in excluding Williams’ testimony about her conversation with Miller and her sons.  He contends he had a right to present this testimony to support his theory of defense of others, pursuant to 
People v. Lynch
, 104 Ill. 2d 194, 470 N.E.2d 1018 (1984).  

It is within the trial court’s discretion to decide whether evidence is relevant and admissible.  
People v. Morgan
, 197 Ill. 2d 404, 455, 758 N.E.2d 813 (2001).  The trial court’s decision will not be reversed absent a clear abuse of discretion.  
Morgan
, 197 Ill. 2d at 455.   

The State contends defendant forfeited the issue by failing to present it in a post-trial motion.  A defendant must raise all alleged trial errors, including the exclusion of certain evidence, at trial 
and
 in a written post-trial motion or they are forfeited.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  This court may review an error not properly preserved where the alleged error affects the substantial rights of the defendant or the evidence is closely balanced.  
People v. Keene
, 169 Ill. 2d 1, 16-17, 660 N.E.2d
 901 (1995); see also 134 Ill. 2d R. 651(a).  We do not believe the exclusion of Williams' testimony affects defendant's substantial rights.  Nor do we believe the evidence was closely balanced.  This issue is forfeited.  
People v. Crum
, 183 Ill. App. 3d 473, 484-85, 539 N.E.2d
 196 (1989).

Forfeiture aside, we find the trial court did not err in excluding the evidence at issue.    

In 
Lynch
, the court held when self-defense is properly raised, evidence of the victim’s aggressive and violent character may be offered for two reasons: (1) to show that the defendant’s knowledge of the victim’s violent tendencies affected defendant’s perceptions of and reactions to the victim’s behavior; and (2) 
to support the defendant’s version of the facts where there are conflicting accounts of what happened.  
Lynch
, 104 Ill. 2d at 199-200.  Under the first approach, evidence is relevant only if the defendant knew of the victim’s violent acts.  Under the second approach, the defendant’s knowledge is irrelevant.      

First we must decide whether defendant was entitled to introduce 
Lynch
 evidence at all.  We find very little evidence, if any, supporting defendant’s theory of defense of others.  Parks had returned to his car and gotten into the car when defendant and Miller began shooting.  Sims testified that Parks had begun driving away when someone shot into the car.  There was no evidence that Parks had a weapon.  Once Parks was in the car, defendant could have walked away and avoided a confrontation.  Instead, defendant became the aggressor when he shot at the car.  

The jury convicted defendant of second degree murder.   A person is guilty of second degree murder if at the time of the killing, he had an unreasonable belief that such force was necessary to prevent imminent death or great bodily harm to himself or another.  720 ILCS 5/7-1(a) (West 2002); 720 ILCS 5/9-2(a)(2) (West 2002).  The verdict centers on the defendant’s unreasonable belief; it is not a statement by the jury that evidence of self-defense actually exists.  On the contrary, the jury would not have reached the issue of second degree murder unless it first rejected the defendant's claim that he acted with lawful justification.

Defendant’s reason for seeking to introduce the evidence is not clear.  He contends in his brief that the evidence was relevant to show his state of mind at the time of the shooting.  But he relies on 
Lynch
, which was a case dealing with evidence of the victim’s violent character to show who was the aggressor, regardless of whether defendant knew of the evidence
.  

As to defendant’s state of mind, Williams’ testimony that her sons and Miller told her Parks had broken into her house is not relevant.  Williams did not testify that she relayed this information to defendant.  According to defendant’s testimony, Miller told him about the break-in.  There is no connection between Williams and defendant.  The evidence simply has no bearing on defendant’s state of mind at the time of the incident. 

Under the second 
Lynch
 category, a defendant has a right to present evidence of a victim’s character for violence when the defendant presents some evidence he acted in self-defense, whether or not defendant knew of the evidence at the time of the event.  Where accounts of the incident are incomplete or conflicting, the jury needs all the available facts to decide what really occurred.  
Lynch
, 104 Ill. 2d at 200.  Even if defendant offered Williams' testimony under this second category of cases, the trial court acted properly in excluding the evidence.  The testimony would have been offered to prove the truth of the matter asserted, that Parks indeed was responsible for breaking into Williams’ house.  In that case, the testimony lacked a reliable foundation.  

Moreover, the trial court allowed defendant to introduce a variety of other evidence, over the State’s objections, to support his theory of defense of others.  The court responded to defendant’s concern that evidence of the victim’s violent tendencies presented through defendant’s testimony alone, would appear self-serving or a fabrication.  See 
People v. Davidson
, 235 Ill. App. 3d 605, 610, 601 N.E.2d
 1146 (1992); 
People v. Gossett
, 115 Ill. App. 3d 655, 664, 451 N.E.2d
 280 (1983).  Defendant testified Miller told him about several violent incidents involving Parks, including that Parks and his friends kicked in a friend’s door and assaulted them with guns because they were looking for Miller.  Defendant also testified Miller told him he was afraid he was going to get killed.  Boston testified about two prior incidents in which he saw Parks with a gun and Parks asking him where Miller lived.  Williams testified she asked Miller why someone knocked down her door looking for him.  In light of the evidence that was allowed to support defendant’s theory, we find the exclusion of Williams’ testimony was not error.

B.  
Failure to give proper jury instructions

Defendant contends he was denied his right to a fair trial because the trial judge did not instruct the jury on the presumption of innocence and the State's burden of proof as to the offenses of aggravated battery with a firearm and aggravated discharge of a firearm.  Defendant contends the court should have given Illinois Pattern Jury Instruction for Criminal Trials No. 2.03 (IPI Criminal 4th No. 2.03) (Illinois Pattern Jury Instruction, Criminal, No. 2.03 (4th ed. 2000)) in addition to IPI Criminal 4th No. 2.03A.

IPI Criminal 4th No. 2.03 states:

"[The] defendant is presumed to be innocent of the charge[s] against him.  This presumption remains with [him] throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty.  

The State has the burden of proving the guilt of [the] defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. [The] defendant is not required to prove his innocence."  Illinois Pattern Jury Instruction, Criminal, No. 2.03 (4th ed. 2000).

In comparison, IPI Criminal 4th No. 2.03A begins, "The defendant is presumed to be innocent of the charge against him of first degree murder."  The committee note following IPI Criminal 4th No. 2.03A indicates both instructions are to be given when there are charges in addition to first and second degree murder.  Defendant contends the trial court's failure to give both instructions deprived him of a fair trial, because the jury was not instructed to apply the presumption of innocence to the aggravated battery and aggravated discharge of a firearm charges.

The State contends defendant waived this issue by failing to request the proper instruction at trial.

Ordinarily, an erroneous failure to give a specific jury instruction is waived if the defendant failed to request the instruction or object at trial.  
People v. Casillas
, 195 Ill. 2d 461, 473, 749 N.E.2d
 864 (2000).  Nonetheless, due to the impact a presumption of innocence instruction has on a trial's fairness, the failure to give the instruction 
sua
 
sponte
 is reviewed under the plain error exception to the waiver doctrine.  
People v. Layhew
, 139 Ill. 2d 476, 485-86, 564 N.E.2d
 1232 (1990); 
Casillas
, 195 Ill. 2d at 474.

Both the United States and Illinois supreme courts have recognized the importance of a written jury instruction on the presumption of innocence in a fair criminal trial.  
Taylor v. Kentucky
, 436 U.S. 478, 490, 56 L. Ed. 2d 468, 478, 98 S. Ct. 1930, 1937 (1978); 
Layhew
, 139 Ill. 2d at 486 ("A written instruction that informs the jury of the presumption of defendant's innocence and the State's burden of proving defendant guilty beyond a reasonable doubt is a time-honored and effective method of protecting a defendant's right to a fair trial, which is guaranteed by the due process clause of the fourteenth amendment"); 
Casillas
, 195 Ill. 2d at 473-74.

Although trial courts should give the instruction at every trial, the failure to do so does not automatically render a trial unfair.  
Layhew
, 139 Ill. 2d at 486; 
Kentucky v. Whorton
, 441 U.S. 786, 789, 60 L. Ed. 2d 640, 643, 99 S. Ct. 2088, 2090 (1979).  When the instruction is not given, courts apply a "totality of circumstances" test to determine if the omission is reversible error.  
Casillas
, 195 Ill. 2d at 474, citing 
Whorton
, 441 U.S. at 789, 60 L. Ed. 2d at 643, 99 S. Ct. at 2090.  The test requires a reviewing court to assess the fairness of a trial by considering all jury instructions, counsel's arguments, whether the weight of the evidence was overwhelming, and any other relevant factors.  
Layhew
, 139 Ill. 2d at 786.  Applying these factors, we must decide whether the failure to give the instruction was harmless beyond a reasonable doubt.  
Casillas
, 195 Ill. 2d at 479.

In 
Casillas
, 195 Ill. 2d at 476-80, the trial court failed to give the jury the standard written instruction on the presumption of innocence.  On review, the Illinois Supreme Court examined all the trial court's statements to the jury, including those made during 
voir
 
dire
 and at trial.  In that case, the trial court asked questions about the presumption of innocence and the State's burden of proof during 
voir
 
dire
 and reminded the jury of those principles several times over the course of the trial.  Both sides addressed the burden of proof in their closing arguments, and the supreme court found the evidence against the defendant was overwhelming.  
Casillas
, 195 Ill. 2d at 478.  Based on those facts, the supreme court found the trial court's failure to give the appropriate written jury instruction was a harmless error.  
Casillas
, 195 Ill. 2d at 479; see also 
Layhew
, 139 Ill. 2d at 491-92 (lack of proper instruction was harmless error even though the evidence against the defendant was not overwhelming); 
Cf.
 
People v. Davis
, 313 Ill. App. 3d 585, 590, 730 N.E.2d
 518 (2000) (lack of proper instruction was reversible error where trial court did not address the presumption of innocence during 
voir
 
dire
 and the evidence against the defendant was not overwhelming).

Applying the totality of circumstances test to this case, we begin by examining the trial court’s comments and the instructions given to the jury.

In 
Casillas
 and 
Layhew
, the court's questions and statements during 
voir
 
dire
 were found to compensate for the lack of a jury instruction on the presumption of innocence.  
Casillas
, 195 Ill. 2d at 474-75; 
Layhew
, 139 Ill. 2d at 491; see also 
People v. Ayala
, 142 Ill. App. 3d 93, 97, 491 N.E.2d
 154 (1986) (no reversible error where trial judge outlined and explained the presumption of innocence and reasonable doubt before 
voir
 
dire
 and questioned each juror about the State's burden and the jury's obligation if that burden was not sustained).  

In this case, the trial judge told potential jurors about the presumption of innocence in his opening comments before 
voir
 
dire
:

"Ladies and gentlemen, the [i]ndictment that I just read to you is not to be taken by you as any evidence of [Defendant's] guilt.  It is the formal method or machinery which is necessary to charge the Defendant with the crimes I have summarized and to place him on trial.  The [i]ndictment is not evidence against the Defendant, and you must not regard it as any indication of his guilt. [Defendant], as with other persons charged with crimes, is presumed to be innocent of the charges that bring him before you.  That presumption cloaks him now at the onset of the trial and will continue to cloak him throughout the course of the proceedings; ***.  It is absolutely essential as we select this jury that each of you understand and embrace these fundamental principles; that is, that all persons charged with a crime are presumed to be innocent, and that it is the burden of the State, who has brought the charges to prove the Defendant guilty beyond a reasonable doubt."

The trial judge went on to explain that defendant had no duty to present any evidence, testify, or prove his innocence.  The court repeated it was the State's burden to prove defendant guilty beyond a reasonable doubt.

During 
voir
 
dire
, the trial judge directed several questions to all potential jurors, including whether they understood the defendant had a right not to testify.  The judge also asked if they would adhere to the State's burden of proof when rendering their verdict.  The trial judge did not ask jurors if they understood the presumption of innocence or whether they would be able to apply the principle. 

When counsel and the trial judge discussed jury instructions, the State tendered IPI Criminal 4th No. 2.03A, but neither side requested IPI Criminal 4th No. 2.03.  As a result, the trial judge did not include the broader instruction on the presumption of innocence when instructing the jury.

Although the court did not give IPI Criminal 4th No. 2.03, he clearly expressed the importance of the presumption of innocence in his opening comments to the venire.  He not only told the venire to apply the presumption, he defined it in relation to the State's burden of proof and defendant's corresponding right to remain silent.  All of the selected jurors were questioned on their ability to apply those principles.

This is not a case where the jury did not hear about the presumption of innocence before the trial began (see 
People v. Pearson
, No. 1-03-3550 (March 31, 2005)); the trial judge covered the topic extensively in his opening comments to the venire.  
Cf.
 
People v. Cage
, 146 Ill. App. 3d 726, 497 N.E.2d
 386 (1986).  Unlike 
Casillas
 and 
Layhew
, where the jury received no written  instruction on the presumption of innocence, here the judge gave IPI Criminal 4th No. 2.03A, which instructed the jury that defendant was presumed innocent of the murder charge.  Additionally, the court instructed the jury that they must find every element of each charge proven beyond a reasonable doubt to find defendant guilty.  The written instructions on aggravated battery with a firearm and aggravated discharge of a firearm provided the elements of each offense in addition to the following statements:

"If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find defendant not guilty."

Although the jury was not instructed that defendant was also presumed innocent of the other charges, we believe the judge's comments during 
voir
 
dire
 compensate for the omission of IPI Criminal 4th No. 2.03 and that this factor weighs in favor of the State.

The second factor we examine is the comments counsel made regarding the presumption of innocence.  Any comments by counsel which reiterate the presumption or affirm its application weigh against reversible error.  
Casillas
, 195 Ill. 2d at 478.

In this case, the Assistant State's Attorney reminded the jury of the judge's earlier comments about the presumption of innocence during his rebuttal closing argument.  Typically, the fact he mentioned the presumption would help the State under the test, but we must consider counsel's statement in context.  After reminding the jury about the presumption, counsel said the presumption no longer applied.  Counsel said:

"When you first came in here, the judge told you that there is a burden of proof that you have to understand and abide by, that is the defendant is presumed innocent.  Ladies and gentlemen, he's not anymore.  The facts you find will prove him guilty.  He may be presumed innocent also but not presumed truthful and don't do it."

Defendant contends that counsel's closing argument weighs in his favor, because counsel told the jury the presumption no longer applied.  We do not believe counsel's improper statement--"he's not anymore"--necessarily diminished the impact of the trial court's comments on the presumption of innocence.  See 
Cage
, 146 Ill. App. 3d at 732-33 (counsel's statements and arguments do not have the same impact on a jury as do the court's instructions).  Nonetheless, counsel's remarks concerning the presumption clearly were meant to attack defendant's innocence rather than affirm the presumption of it.  As such, we believe counsel's statement that the presumption of innocence no longer applied negated any beneficial effect his argument may have had.

Applying the third factor, we weigh the strength of the evidence against defendant.  In this case, we believe the evidence of his guilt was overwhelming.  Defendant's videotaped statement and his testimony at trial corroborated the testimony of the State's witnesses.  Sims testified someone shot into the rear window of Parks' car.  Defendant admitted in his videotaped statement and at trial that he fired two bullets through the car's rear window.  Seals testified he saw defendant retrieve a gun from beneath an abandoned porch--a fact defendant never denied.  In the videotaped statement, defendant told police he retrieved the .380 caliber handgun, the murder weapon, for his brother.  The statement is strong evidence of defendant's guilt even though he testified parts of it were not true.  

In short, there was very little evidence to support defendant's defense of others theory.  Although defendant testified he was aware of earlier conflicts between his brother and the victim and was "afraid" for his brother, there was little evidence that Parks posed an imminent threat to Miller on the night of the shooting.  Defendant did not see Parks with a gun that night.  In his statement, defendant said Parks was trying to drive away when the shooting occurred.  Considering defendant and his brother pursued and opened fire on an unarmed man, we believe the evidence supporting defendant's defense theory was somewhere between weak and nonexistent.

Defendant contends the language the trial court used to describe the presumption of innocence and the right to remain silent was disparaging to defendant and is a fact that weighs in favor of reversal.  Specifically, he contends: (1) the judge suggested defendant had something to hide when he said the presumption of innocence "cloaks [defendant] now at the onset of the trial and will continue to cloak him throughout the course of the proceedings;" and (2) the trial judge implied defendant was lazy by saying he could "simply sit here and rely upon what he and his attorneys perceive to be the inability of the State to present sufficient evidence to meet their burden."  

We find no error in the judge's choice of words.  The judge's comments accurately described these legal principles, using simple language the jury could understand.  We believe the judge's comments educated the jury on the presumption of innocence without any disadvantage to defendant.

The properly instructed jury found defendant guilty of first degree murder, before moving on to consider mitigation of the offense.  After such a finding, we believe it is highly unlikely a reasonable jury would have acquitted defendant of the aggravated battery with a firearm charge.  Both crimes resulted from the same firing of bullets.

After applying each part of the totality of circumstances test to this case, we find the result of this trial would not have been different had the trial court given the pattern jury instruction on the presumption of innocence.  Its failure to do so was harmless beyond a reasonable doubt.

C.  
Prosecutorial misconduct during closing arguments

Defendant contends he was denied a fair trial because the prosecutor made several improper and prejudicial statements during his closing argument.  Those statements were:

(1) "***, the Judge told you, that there is a burden of proof that you have to abide by, that is the defendant is presumed innocent.  Ladies and gentlemen, he’s not anymore;"

(2) "[Defendant] may be presumed innocent also but not presumed truthful and don’t do it.  He’s giving you a story he’s made up. *** It’s a Hail Mary.  He’s hoping you will catch it;"

(3) "You have an opportunity to do something about gangs and gang violence.  You have the unique opportunity to send a message to [defendant] and the [Gangster Disciples] over at 103rd Street;" and

(4) "Let me give you an example.  There is a horrible bombing.  One person builds the bomb, another person transports the bomb. *** A third person detonates the bomb and there is [
sic
] major fatalities.  The law does not allow somebody to put up their hands and act as a shield and say hey, I only built the bomb ***."

At trial, defendant failed to object to the first two statements.  He failed to raise the first three statements as alleged errors in his motion for a new trial.  Accordingly, defendant has forfeited these issues and we cannot consider them unless we find they constitute plain error.  
Enoch
, 122 Ill. 2d at 186.  The plain error rule may be invoked to review forfeited alleged errors under two circumstances: (1) the evidence is closely balanced or (2) the error is so fundamental and of such magnitude that the accused is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process.  
People v. Johnson
, 208 Ill. 2d 53, 64, 803 N.E.2d
 405 (2003). 

The evidence in this case was not closely balanced.  In his videotaped statement to police and again at trial, the defendant admitted shooting the victims.  The evidence at trial did not support defendant’s theory that he was defending Miller.

      Whether we consider the prosecution statements depends on whether the alleged errors were so fundamental that defendant was denied the right to a fair trial.  We find none of the alleged errors in the prosecutor’s closing argument meets that standard.  

We agree the statement that defendant is not presumed innocent "anymore" was a misstatement of the law.  However, the statement did not affect defendant’s substantial rights because the State made only one reference to the presumption of innocence, and the trial judge explained the presumption of innocence extensively in his opening comments to the jury.  See 
People v. Brooks
, 345 Ill. App. 3d 945, 952, 803 N.E.2d
 626 (2004).  

The prosecutor’s comments suggesting defendant "made up" his story were properly based on reasonable inferences from the evidence at trial.  
People v. Williams
, 192 Ill. 2d 548, 573, 736 N.E.2d
 1001 (2000).  The prosecutor argued that defendant’s testimony differed from his videotaped confession, in which defendant said nothing about Miller being afraid of Parks or that defendant shot Parks to protect Miller.  Taken in the context of the State’s entire argument, the inference that defendant had changed his story was permissible argument that did not deprive defendant of his right to a fair trial.  

The prosecutor’s exhortation to the jury to "send a message" about gangs and gang violence, while improper, did not deprive defendant of his substantial rights because the prosecutor did not substitute an improper, irrelevant issue for the issue properly before the jury.  See 
People v. Mena
, 345 Ill. App. 3d 418, 426, 803 N.E.2d
 92 (2003); 
Cf.
 
People v. Fluker
, 318 Ill. App. 3d 193, 202-03, 742 N.E.2d
 799 (2000).  Although the court incorrectly overruled defendant’s objection, the court instructed the jury that the comments constituted argument, and the jury should disregard argument not supported by the evidence.   

Defendant properly preserved the issue regarding the prosecutor’s use of the bomb-maker analogy.  Defendant contends the analogy was improper because the prosecutor "appealed to the jury’s fears as to the state of the world after the events of September 11, 2001" solely to distract and inflame the passions of the jury.   

" 'A prosecutor properly may give examples illustrating the application of the law to the facts, and where the prosecutor correctly states the law, there can be no prejudice to the opposing party.' "  
People v. Jackson
, 333 Ill. App. 3d 962, 969-70, 777 N.E.2d
 626 (2002), quoting 
People v. London
, 256 Ill. App. 3d 661, 665, 628 N.E.2d
 621 (1993).  In 
London
, an armed robbery case, the court found proper the State’s use of a bank-robber analogy to explain to the jury the law of accountability.  
London
, 256 Ill. App. 3d at 665.

We see no reversible error in the prosecutor’s unfortunate use of the analogy to explain accountability to the jury, particularly where the trial judge specifically instructed the jury that it was not evidence, but an analogy.  The judge orally instructed the jury prior to closing arguments, and again in the jury instructions, that opening statements and closing arguments are not evidence, and any statement or argument not based on the evidence should be disregarded.  The defendant has not demonstrated he was prejudiced by the statement.  We might have arrived at a contrary conclusion had the evidence been closer.

Because defendant forfeited three of the issues involving the prosecutor’s closing argument, and the fourth issue was not reversible error, we do not consider defendant’s argument that the cumulative effect of the comments denied him a fair trial.  See 
People v. Blue
, 189 Ill. 2d 99. 724 N.E.2d
 920 (2000).  

II.  Ineffective Assistance of Trial Counsel

Defendant contends he was denied effective assistance of trial counsel because his attorney did not request body attachments to ensure the appearance of two defense witnesses--Brandon Ross and Antoinette Glaspar.  Defendant contends their testimony would have strengthened his defense of others theory.

During a conference in the judge's chambers, Miller's attorney told the trial judge that Ross and Glaspar would testify they saw Parks threaten Miller with a gun during an altercation over a young woman.  The attorney said the witnesses were not in court because they were attending a funeral that day, but told the judge, "because of what these people are telling me about their gang relationships, they may simply be afraid to come."  Defendant's attorney told the court defendant would adopt Ross and Glaspar's testimony to show Miller feared Parks and that Nunn was aware of his brother's fears.  When Ross and Glaspar failed to appear at trial, defendant's attorney did not request body attachment to enforce the subpoenas.

We apply the 
Strickland
 test to determine whether trial counsel rendered ineffective assistance.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  Under the test, defendant must show that: (1) counsel's error was unreasonable, and (2) but for the error, there is a reasonable probability that the outcome would have been different.  
Strickland
, 466 U.S. at 689-94, 80 L. Ed. 2d at 694-98, 104 S. Ct. at 2064-68.  Both prongs of 
Strickland
 must be met, and the failure to satisfy either part precludes a finding of ineffective assistance of counsel.  
People v. Patterson
, 192 Ill. 2d 93, 107, 735 N.E.2d
 616 (2000).

An attorney's decision as to which witnesses to call is a matter of trial strategy and will not support ineffective assistance of trial counsel claims.  
People v. Enis
, 194 Ill. 2d 361, 378, 743 N.E.2d
 1 (2000).  "This is not the case, however, where counsel's strategy was so unsound that no meaningful adversarial testing was conducted."  
Enis
, 194 Ill. 2d at 378.  

Here, counsel called several witnesses to present evidence supporting his defense of others theory.  He vigorously defended the case at every stage of the proceedings.  Although counsel decided not to compel Ross and Glaspar to testify involuntarily, we do not believe the decision undermines his performance so that it lacked any meaningful adversarial testing.

To the extent defendant contends his attorney was ineffective for failing to investigate mitigating evidence, the record indicates no such failure.  Defense counsel knew Ross and Glaspar would testify about an altercation between Parks and Miller, and he indicated what role their testimony would play in supporting his defense theory.  On direct examination, counsel questioned defendant about his knowledge of the incident.  Counsel's conduct shows nothing to support defendant's claim that counsel failed to investigate the witnesses.

In this case, defendant's claim of ineffective assistance of counsel also fails the second prong of the 
Strickland
 test.  Given the overwhelming evidence of defendant's guilt, including eyewitness testimony and defendant's statement, it is unlikely that Ross or Glaspar's testimony would have changed the outcome at defendant's trial.  Their testimony would have been offered to establish that defendant had a general fear Parks would harm his brother--a fact already established through other witnesses' testimony, including defendant's.  In that sense, the additional testimony would have been cumulative.  

Defendant contends the additional testimony was not cumulative because it would have supported his theory that Parks was the aggressor by showing he was aggressive in the past.  Considering several eyewitnesses and defendant testified Parks was leaving the scene when defendant and Miller began shooting, we do not believe additional testimony about an altercation that occurred several months earlier would have persuaded the jury that Parks was the aggressor on April 17, 1999.  We believe defendant has failed to show prejudice under 
Strickland
, and we find defendant's attorney did not render ineffective assistance.

III.  One Act, One Crime Rule

Defendant contends his multiple convictions for second degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm violate the one act, one crime rule under 
People v. Crespo
, 203 Ill. 2d 335, 788 N.E.2d
 1117 (2001).  The State agrees, as do we.  Accordingly, we vacate defendant's conviction of the less serious aggravated discharge of a firearm and corresponding sentence of 12 years' imprisonment.

CONCLUSION 

We affirm defendant's convictions for second degree murder and aggravated battery with a firearm.  We vacate defendant's conviction and corresponding sentence for aggravated discharge of a firearm.

Affirmed in part; vacated in part; mittimus corrected.

BURKE, P.J., and GARCIA, J., concur.

FOOTNOTES
1: Defendant Nunn and codefendant Jamel Miller were tried simultaneously by separate juries.