(No. 69657.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WAYNE LAYHEW, Appellee.

*Opinion filed November 30, 1990.*

478

Neil F. Hartigan, Attorney General, of Springfield, and Frederick Turner, State's Attorney, of Golconda (Robert J. Ruiz, Solicitor General, Terence M. Madsen and Steven J. Zick, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, Stephen E. Norris and Gerry R. Arnold, of the Office of the State's Attorneys Appellate Prosecutor, of Mount Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, of Mount Vernon, Daniel D. Yuhas, Deputy Defender, and Lori L. Mosby, Assistant Defender, both of Springfield, all of the Office of the State Appellate Defender, for appellee.

JUSTICE RYAN delivered the opinion of the court:

The circuit court of Pope County convicted defendant, Wayne Layhew, of aggravated criminal sexual assault and sentenced him to 13 years' imprisonment. The fifth district of the appellate court reversed defendant's conviction and remanded the cause, holding that the trial court's failure to provide *sua sponte* the jury with a written instruction specifically informing it that defendant is presumed innocent until proven guilty beyond a reason-

able doubt was error and held that that instruction must be given in all cases. (191 Ill. App. 3d 592.) The State filed a petition for leave to appeal (107 Ill. 2d R. 315), which this court granted. We reverse.

Although unpalatable, a recitation of the facts in this case is necessary for disposition of this appeal. The record reveals that defendant was charged with criminal sexual assault and aggravated criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13(a)(2), 12—14(b)(1).) The State alleged that defendant committed an act of sexual penetration with the victim knowing that the victim was unable to give knowing consent and that at the time this act occurred defendant was 17 years of age or older and the victim was under 13 years of age. The jury convicted defendant on both counts, but the court entered judgment only on the latter and sentenced him accordingly.

The trial court read these charges to all the prospective jurors and then the judge made some remarks to the panel, as follows:

"Now I'm going to read something to you, if you'll pay close attention. At this time I'm going to touch upon certain broad and fundamental principles of law in order to assist you further in understanding and following the evidence and the law in this case. My remarks at this time are not to be considered by you as instructions by the Court in this case. After you've heard all the evidence in the case and the arguments of counsel, the Court will at that time instruct you in writing as to the law applicable to the case. The information in this case is not to be considered as any evidence or presumption of guilt against the defendant. It is the mere formal charge necessary to place defendant upon trial. The defendant, under the law, is presumed to be innocent of the charges in the information and this presumption remains throughout the trial with the defendant until you have been satisfied by the evidence in the case beyond a reasonable

doubt as to the guilt of defendant. The burden of proving the defendant guilty beyond a reasonable doubt is on the State. The law does not require the defendant to prove his innocence. The judge is the judge of the law and after you've heard all of the evidence in the case and the arguments of counsel, the Court will instruct you in full as to the law applicable to the case, and will then submit verdicts to you for your consideration. These instructions will be in writing and after being read to you by the Court, will be given to you to be taken to the jury room with the verdicts for your consideration while you deliberate. It is your absolute duty to accept the law as defined in these instructions and to follow them. *** After the jury has heard all the evidence in this case and the arguments of counsel and has received the written instructions of the Court as to the law that is applicable to this case, it will be the duty of the jury to determine whether the defendant is guilty or not guilty. If you become convinced from all the evidence in the case beyond a reasonable doubt that the defendant is guilty as charged in the information, it will be your duty to find him guilty. On the other hand, if you do not become convinced beyond a reasonable doubt of the guilt of the defendant, it will be your duty to find him not guilty."

The trial court then proceeded to examine each of the prospective jurors. The court asked the following questions to each juror who ultimately served, which each juror answered to the satisfaction of the court:

"Do you have any bias or prejudice against a person simply because he may be charged with a crime?

* * *

Do you have any quarrel with the concept that the defendant is innocent until proven guilty beyond a reasonable doubt?"

Because the jury was impaneled in groups of four, each juror heard these questions repeatedly. Defendant's attorney also reiterated this concept during his opening statement.

The first witness that the State called was the victim, who was eight years old at the time of her testimony and whom the court found to be qualified to testify. She stated that she lived with her mother but that on several days in February 1986, she stayed with her aunt while the victim's mother was in the hospital. Defendant lived with the victim's aunt at that time. The victim testified that on the second day that she stayed with defendant he told her to lie with him on the couch, which she did. He then told her to unbutton her pants, but she refused. The victim then testified that defendant pulled her pants down and then pulled down her panties with them. He then, in the words of the victim, "stuck his wiener halfway in my monkey." From the victim's further testimony the jury could infer that the word "wiener" meant penis and the word "monkey" meant vagina. The victim further elaborated about the details of the incident, stating, among other things, that she went outside immediately afterward and including the observation that defendant had been "drinking a bunch of beer."

The State then presented the testimony of the victim's mother. She testified that, a day or two after she returned from the hospital, having just given birth to her son, she spoke to the victim. She testified that the victim related to her that defendant had "made love to" the victim on the couch in her aunt's home. The victim's mother stated that she then called the sheriff's office and that arrangements were later made to have an investigator from the Department of Children and Family Services (DCFS) discuss the incident with the victim. On cross-examination, defendant's attorney brought out the fact that the victim's mother told a slightly different and more detailed version of the story to the DCFS investigator.

The DCFS investigator then testified for the State. She stated that, at the time of her testimony, she had

482

been a child abuse investigator for 2½ years. She stated that she spoke to the child and the child's mother on February 22, 1986. The investigator testified that the child told her about the incident in considerable detail. The victim reportedly told the investigator that defendant "tried to kiss her, that he stuck his tongue in her ear and kissed her neck *** that he hollered at her [and] *** that he had taken his ding dong and put it down near her hole." The victim also reportedly stated that defendant kissed her breasts and vaginal area, and that these events occurred on the sofa during the course of two days.

The DCFS investigator also related that the victim was able to describe the size of defendant's penis, although the victim never saw it, and she was able to demonstrate the position that they were in and the movements that they made, concluding that "she made motions as if he was having intercourse with her." The DCFS investigator also asked the victim whether anything "had come out of his ding-dong," to which the victim responded that something did and that "it was sticky and it was peach colored and it looked like what came out of dogs." Finally, the investigator testified that she took the victim to the hospital and that this was approximately one week after the incident. The parties stipulated that, if called to testify, the doctor who examined the victim would state that he took smears of the victim's throat, vagina and urethra but found "no visible medical evidence of sexual contact or abuse other than the absence of a hymen." The doctor would further state, it was stipulated, that the absence of a hymen is not "solid evidence of penetration" and the "lack of physical evidence could be explained by the seven day delay between the alleged occurrence and his examination."

The State then called a youth services coordinator, who testified that the victim related the same story to her. The coordinator stated that she spoke to the victim in March 1986, and that the interview was arranged by the DCFS. The coordinator also stated that the victim returned on several subsequent occasions and participated in group counselling. On cross-examination, defendant's attorney brought out the fact that a worker from the DCFS arranged the first meeting because the victim's stepfather thought she was lying.

The State's final witness was an investigator with the Illinois State Police, who served defendant with an arrest warrant in May 1986. He stated that he interviewed defendant after serving him with the warrant and informing him of his constitutional rights. The investigator testified that during this conversation defendant neither admitted nor denied the charges, but did admit "hugging and kissing the little girl and she was also sitting on his knee at one time." On cross-examination, the investigator testified that defendant denied having sexual contact with the victim.

Defendant then called the victim's aunt on his behalf. She testified that she had lived with defendant for between 8 and 10 years. She stated that at the time of the incident she was working at a nursing home from 2:30 p.m until 10:30 p.m. She stated that she spoke to the victim while the victim was staying with her, that the victim never mentioned the incident to her and that the victim did not appear upset. On cross-examination, the victim's aunt stated that she performed a cursory physical examination of the victim, and she stated that she asked the victim "if Wayne had bothered her in any way, did Wayne take her to bed or did Wayne do this and she said no." It is unclear from the record what caused her to ask these questions. Defendant also called a witness

who testified that he knows defendant and that defendant has a good reputation for truthfulness and morality.

Finally, defendant testified. He denied ever sexually abusing the victim or doing anything he would consider to be improper. He further stated that he could not understand why he had been charged.

During closing arguments, defendant's attorney made the following remark, which is significant to this appeal:

> "As the defendant sits here right now, he's viewed as being not guilty. It's the State's burden to prove him guilty. I submit to you that that has not been done beyond a reasonable doubt."

The court then instructed the jury as to the law applicable to the case. The court read the instructions to the jury and then provided it with the written instructions, which the jury brought with them into the jury room. The following instructions are particularly significant:

> "The law that applies to this case is stated in these instructions and it is your duty to follow all of them. You must not single out certain instructions and disregard others."

> "The information in this case is the formal method of accusing the defendant of an offense and placing him on trial. It is not evidence against the defendant and does not create any inference of guilt."

> "Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be dis-regarded."

> "The defendant has introduced evidence of his reputation for morality. This evidence may be sufficient when considered with the other evidence in the case to raise a reasonable doubt of the defendant's guilt. However, if from all the evidence in the case you are satisfied beyond a reasonable doubt of the defendant's guilt then it is your duty to find him guilty, even though he may have a good reputation for morality."

"The defendant has introduced evidence of his reputation for truth and veracity. This evidence may be sufficient when considered with the other evidence in the case to raise a reasonable doubt of the defendant's guilt. However, if from all the evidence in the case you are satisfied beyond a reasonable doubt of the defendant's guilt then it is your duty to find him guilty, even though he may have a good reputation for truth and veracity."

Neither defendant nor prosecution tendered a specific, independent written instruction on the presumption of innocence and burden of proof, and the court did not provide such an instruction *sua sponte*. Such an instruction would have stated as follows:

"[(The) (Each)] defendant is presumed to be innocent of the charge[s] against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence." (Illinois Pattern Jury Instructions, Criminal, No. 2.03 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 2.03).)

Defendant contends, and the appellate court found, that the absence of these written instructions requires reversal of his conviction. We cannot agree.

The State first points out that defendant did not tender this instruction nor raise any objection either during the trial or in a post-trial motion. The State contends that defendant has, therefore, "waived" any argument on appeal. In *People v. Parks* (1976), 65 Ill. 2d 132, 137, however, this court observed the following:

"Generally, a party who desires a specific instruction must offer it and request the court to give it and the trial court has no obligation to instruct on its own motion. (*People v. Nuccio* (1973), 54 Ill. 2d 39; *People v. Springs*

(1972), 51 Ill. 2d 418.) In criminal cases, however, this rule is modified in certain situations by the requirements of a fair trial. It has been held that a court bears the burden of seeing that the jury is instructed on the elements of·the crime charged, on the presumption of innocence and on the question of burden of proof. *People v. French* (1972), 5 Ill. App. 3d 908; *People v. Kuykendall* (1970), 120 Ill. App. 2d 225; *People v. Davis* (1966), 74 Ill. App. 2d 450; Note, *Criminal Juries and Defenses, Instruction of Jurors*, 7 Loy. U. Chi. L.J. 1036, 1042, 1046 (1976)."

This court, therefore, will notice this error and endeavor to determine whether it denied defendant a fair trial. *People v. Baynes* (1981), 88 Ill. 2d 225, 231, citing 73 Ill. 2d R. 615(a).

A written instruction that informs the jury of the presumption of defendant's innocence and the State's burden of proving defendant guilty beyond a reasonable doubt is a time-honored and effective method of protecting a defendant's right to a fair trial, which is guaranteed by the due process clause of the fourteenth amendment. (*Taylor v. Kentucky* (1978), 436 U.S. 478, 490, 56 L. Ed. 2d 468, 478, 98 S. Ct. 1930, 1937.) The trial court's failure to give this written instruction, however, although error, does not automatically result in a finding that defendant's constitutionally protected right to a fair trial has been violated. (*Kentucky v. Whorton* (1979), 441 U.S. 786, 789, 60 L. Ed. 2d 640, 643, 99 S. Ct. 2088, 2090.) That is, a reviewing court must look to all the circumstances to determine whether defendant received a fair trial, "including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors." *Whorton*, 441 U.S. at 789, 60 L. Ed. 2d at 643, 99 S. Ct. at 2090.

This court addressed a situation in which only part of IPI Criminal 2d No. 2.03 was given in a case decided before *Whorton* and *Taylor*. (*People v. Cesarz* (1969), 44

Ill. 2d 180, 190.) There, this court found that the trial court's failure to provide the entire instruction was error but, nevertheless, not reversible error because the jury was otherwise adequately instructed.

The appellate court also encountered this situation in *People v. French* (1972), 5 Ill. App. 3d 908. In *French*, the court, without detailed discussion, found that the facts in that case warranted reversal of defendant's conviction where the trial court failed to provide, *sua sponte*, IPI Criminal 2d No. 2.03.

The appellate court also encountered this problem in *People v. Donald* (1974), 21 Ill. App. 3d 696. The *Donald* court also reversed defendant's conviction, finding that the statements of counsel to the effect that defendant was presumed innocent and must be proven guilty beyond a reasonable doubt were nullified by the trial court's instruction to the jury informing it that the arguments of the attorneys were not evidence. The *Donald* court further found that the other instructions that the court gave to the jury that informed it of the State's burden of proof were insufficient because they failed to inform the jury of defendant's presumption of innocence.

The appellate court also reversed defendant's conviction in *People v. Carpenter* (1981), 101 Ill. App. 3d 792, which is apparently the first case to be decided after *Whorton*, although the analysis changed little. In *Carpenter*, the appellate court found that the trial court briefly mentioned the State's burden of proof and defendant's presumption of innocence in general statements to all the prospective jurors during *voir dire* and in questions posed to 2 of 17 jurors. The prosecutor also mentioned defendant's presumption of innocence in his closing argument, and the jury instructions on aggravated battery and armed robbery stated the burden of proof; defendant was convicted of armed robbery and attempted murder. The appellate court concluded that the

trial court's failure to instruct the jury on defendant's presumption of innocence, and the fact that the instructions regarding the various charges were imbalanced, operated to deny defendant a fair trial. The appellate court further found that statements that the trial court made during *voir dire* were rendered ineffective by the court's further admonishment to the jurors that the law applicable to the case was stated in the instructions.

A criminal defendant was also granted a new trial in *People v. Williams* (1983), 120 Ill. App. 3d 900. The *Williams* court found that the jury was not adequately instructed where defendant's presumption of innocence and the State's burden of proof were mentioned only once at the beginning of *voir dire*, and the reasonable doubt standard was mentioned only once in an armed robbery instruction.

*People v. Ayala* (1986), 142 Ill. App. 3d 93, is apparently the only reported Illinois case in which a reviewing court, given the absence of a written instruction on defendant's presumption of innocence and the State's burden of proof, and applying the *Whorton* totality of the circumstances test, was able to affirm defendant's conviction. The *Ayala* court noted that the trial court explained the concepts of presumption of innocence and burden of proof to the jury at the start of *voir dire* and questioned each juror about these concepts, each juror heard these questions several times and defendant's attorney repeatedly emphasized the concept during closing argument. The *Ayala* court concluded that, based on the totality of the circumstances of that case, defendant was not denied a fair trial.

The appellate court distinguished *Ayala* in another recent case (*People v. Cage* (1986), 146 Ill. App. 3d 726). The *Cage* court found that the statements that the trial court made during *voir dire* were not as extensive as those made in *Ayala*. The *Cage* court further found that

the trial court's references to fairness related more to the disparity in race between the victim and defendant rather than to the burden of proof or presumption of innocence. Finally, the *Cage* court found that the statements of defendant's attorney were not sufficiently effective to validate defendant's conviction in the absence of a specific instruction stating the burden of proof and presumption of innocence.

While this court cannot conclude that it would have decided each of these cases the same way as the appellate court did, since we do not have the records before us and these cases all necessarily turn on their own facts, we do note that the appellate court performed the proper analysis in each case. That is, it looked to the totality of the circumstances to determine whether each defendant received a fair trial. While this process is tedious and time-consuming, it is nevertheless the only manner in which the reviewing court can protect the constitutional right of criminal defendants to receive a fair trial while at the same time protect the integrity of the judicial process by upholding the convictions of those found guilty through a fair trial. We reiterate that trial courts should give IPI Criminal 2d No. 2.03 to the jury in every case, but when it fails to do so, *Whorton* teaches us that the Federal Constitution does not require automatic reversal.

In the present case, however, a two-justice majority of a panel of the appellate court in the fifth district chose not to embark upon the proper inquiry but, rather, to issue a "directive" to all the trial courts within that district that if they did not provide this instruction automatic reversal would be required. We must remind that court that there is but one appellate court within the State of Illinois, and that a panel of the appellate court does not have constitutional authority to issue "directives" to lower courts within its district. That concept is

the relic of the pre-1964 Illinois Constitution of 1870, when appellate court decisions were considered binding only on the trial courts within that district. (See Mattis & Yalowitz, *Stare Decisis Among* [*sic*] *the Appellate Court of Illinois*, 28 De Paul L. Rev. 571 (1979).) We urge the court to apply constitutional law as it is stated by the United States Supreme Court and by this court. Because the appellate court failed to do this, we will endeavor to do so.

As stated earlier, the United States Supreme Court identified several factors to which courts should look when deciding whether a criminal defendant has received a fair trial even in the absence of a specific written instruction to the jury on burden of proof and presumption of innocence. First, the reviewing court must look at the instructions that the trial court actually did give to the jury. In the present case, the trial court discussed the jury's role extensively at the start of *voir dire*, and that discussion is quoted in part earlier in this opinion. The trial court discussed at length, repeatedly and in the presence of all the jurors, the State's burden of proof and defendant's presumption of innocence. Moreover, the written instructions that the trial court provided regarding the evidence that defendant presented concerning his reputation for truth and morality, and the instruction relating to the information, repeated this concept.

The Supreme Court also identified the statements of counsel as significant. In the present case, defendant's attorney repeated the principle that defendant is innocent until the State proves his guilt beyond a reasonable doubt in his closing argument.

Another factor that the Supreme Court identified as significant is whether the weight of the evidence is overwhelming. Our review of the facts in this case indicates that the evidence falls short of being overwhelming. In a

sexual assault case such as this, however, because of the complaining witness' age, coupled with the trauma she or he has endured, and the difficulty in obtaining physical evidence, the evidence will often fall short of being overwhelming. We note, nevertheless, that the evidence in this case is sufficient to sustain defendant's conviction. The victim's testimony was competent and courageous, and that itself is sufficient to withstand an attack, for the jury was entitled to believe whom it chose.

The Supreme Court also encouraged courts to look at other relevant factors to determine whether, based on the totality of the circumstances, defendant received a fair trial. In the present case, we note that the trial court questioned each juror about his or her understanding of the principle that defendant is innocent until proven guilty beyond a reasonable doubt. This, it seems, is at least as effective a method of ensuring that the jury engage upon the proper analysis as any formal, written instruction. This is not to say that courts should abandon giving IPI Criminal 2d No. 2.03. In viewing the totality of the circumstances in this case, however, it supports the conclusion that defendant received a fair trial even in the absence of a written instruction on the burden of proof and presumption of innocence.

There are other factors in this case that work in defendant's favor. Defendant points to the trial court's initial statement that "my remarks at this time are not to be considered by you as instructions by the court in this case," and the court's statement that it would instruct the jury as to the law applicable to the case at the close of all the evidence. The court also provided the jury with the following written instruction: "The law that applies to this case is stated in these instructions and it is your duty to follow all of them." The court also admonished the jury not to consider the remarks of counsel as evidence in the case.

Our review of the record in this case, however, persuades us that the jury was adequately informed about the burden of proof and presumption of innocence. The trial court provided an extensive dissertation on these principles before the trial started and only those jurors who embraced these principles were chosen to serve. The court's initial statement to the jury at the start of *voir dire* impressed upon the jury that these principles are inviolable. These concepts were repeated during the trial and included within three jury instructions. The totality of the circumstances reveals that the jury was properly informed and defendant was properly convicted. In short, we conclude that the result of this trial would not have been different had the trial court provided the jury with IPI Criminal 2d No. 2.03 in written form and the court's failure to do so is, therefore, harmless beyond a reasonable doubt. *People v. Fierer* (1988), 124 Ill. 2d 176, 187.

The appellate court also discussed, and defendant raises again here, the issue of juror note-taking. Before the trial started, the court and both attorneys entered into an agreement that the jurors would not be permitted to take notes. Defendant now argues that this agreement violates the mandatory language found in the Code of Criminal Procedure that states, in part, as follows:

> "The members of the jury shall be entitled to take notes during the trial, and the sheriff of the county in which the jury is sitting shall provide them with writing materials for this purpose." (Ill. Rev. Stat. 1989, ch. 38, par. 115—4(n); ch. 78, par. 36(b).)

Defendant also contends that this error requires reversal of his conviction. Defendant, however, failed to object to this agreement at trial and failed to raise any question in his post-trial motion. Defendant, nevertheless, contends that the appellate court was correct in its conclusion that defendant could not waive the right of the jurors to take

notes because that right inured to the jurors and not to him. The question, though, is not whether defendant waived any rights but, rather, whether defendant is barred by the doctrine of procedural default from now raising the question. We conclude that he is.

While it may be true that defendant could not waive or stipulate away a right that inures to the jurors, the doctrine of procedural default has little to do with waiver. (*People v. Free* (1988), 122 Ill. 2d 367, 379-81 (Ryan, J., dissenting), citing Wangerin, *"Plain Error" and "Fundamental Fairness": Toward a Definition of Exceptions to the Rules of Procedural Default*, 29 De Paul L. Rev. 753 (1980).) That is, defendant is precluded from raising this argument not because he has waived or stipulated away a right but, rather, because he has failed to comply with certain procedural rules that require him to object to errors at trial and in a post-trial motion or suffer the consequence of the reviewing court's refusing to hear the argument. Defendant, moreover, fails to state any reason why this court should apply an exception to the procedural default rule.

Finally, defendant contends on cross-appeal that the trial court erred by allowing the introduction of certain corroborative complaint testimony that transcended the bounds of the exception to the hearsay rule. (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.) While defendant did lodge objections during the trial to some of what he now claims to be error, he failed to object to most of what he now tries to raise. Moreover, defendant failed to raise this argument at all in a post-trial motion and, therefore, his objection is barred by the doctrine of procedural default. We also note that the victim was available for cross-examination, and therefore, any error that might have occurred by allowing this corroborative complaint testimony would be harmless. (See *In re E.S.* (1986), 145

Ill. App. 3d 906.) In fact, defendant's attorney did cross-examine the victim and each of the corroborating witnesses. Much of what defendant now objects to he brought out himself, and much of that testimony defendant actually used to try to impeach the victim's testimony. We are not persuaded, therefore, that we should apply an exception to the doctrine of procedural default in this case.

Defendant also apparently contends, in the last paragraph of his brief, that he was denied effective assistance of counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Defendant, however, fails to establish that his trial attorney was not reasonably effective or that any decisions his attorney made were not merely matters of sound discretion. Moreover, we are convinced that the outcome of this trial would not have been different even if the trial court limited some of the testimony of the corroborating witnesses.

For the foregoing reasons, we reverse the decision of the appellate court and affirm the judgment of the circuit court of Pope County.

*Appellate court reversed;*
*circuit court affirmed.*