# Illinois Official Reports

## Appellate Court

---

### *People v. Irby*, 2015 IL App (3d) 130429

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSHUA M. IRBY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0429 |
| Filed | May 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-CF-823; the Hon. Stephen Kouri, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Dimitri Golfis (argued), of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Laura E. DeMichael (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                      JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices Lytton and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1        Following a stipulated bench trial, the court found defendant, Joshua Irby, guilty of aggravated unlawful use of a weapon and sentenced him to six years' imprisonment followed by three years' mandatory supervised release. In a separate order, the court ordered defendant to pay $100 Violent Crime Victims Assistance Fund assessment and $20 Crime Stoppers assessment. Three months later, the clerk issued two separate payment sheets, each totaling $677.50 in assessments. The clerk did not apply the statutory $5 *per diem* credit to the assessments.

¶ 2        Defendant appeals, arguing that: (1) the court erred in denying his motion to suppress; (2) the State failed to present sufficient evidence to support a guilty finding beyond a reasonable doubt; and (3) the clerk of the circuit court erred in imposing monetary fines and fees against defendant. For the following reasons, we reverse.

¶ 3                                      BACKGROUND

¶ 4        The State charged defendant with one count of aggravated unlawful use of a weapon and one count of unlawful possession of a weapon by a felon. The case proceeded to a bench trial in March 2013. Ultimately, the court found defendant guilty of aggravated unlawful use of a weapon; the court dismissed the charge of unlawful possession of a weapon by a felon.

¶ 5        On August 2, 2012, police arrested defendant outside of his home located at 2910 West Wyoming. Prior to trial, defendant moved to quash his arrest and suppress evidence obtained from searching him and his car. The court conducted a motion hearing where the parties presented the following evidence.

¶ 6        Defendant testified that on August 2, 2012, his girlfriend "Miss Foster" visited him around midnight. Foster parked her Ford Explorer truck on the street outside of defendant's house. She met defendant on the front porch. Defendant and Foster then sat inside Foster's truck; defendant sat in the driver's seat. Foster left the keys in the ignition, but defendant did not turn the vehicle on or drive it. Defendant did not possess a valid driver's license.

¶ 7        Defendant and Foster sat in the vehicle for approximately 30 minutes and listened to music. Police officers approached the vehicle and requested defendant's identification, which defendant provided. The police officers then opened the door and pulled defendant out of the vehicle. Foster remained in the passenger seat while police searched and handcuffed defendant. The police did not find anything illegal on defendant. The police searched Foster and the car. Foster had an open wine cooler in the cup holder of the console. Defendant did not remember whether Foster had a "hitter pipe" in the console. The officer did not run identification before taking defendant into custody.

¶ 8        Officer Rory Poynter also testified at the motion hearing. He worked for the "Street Crimes Unit." On August 2, 2012, he patrolled the streets in a semi-marked patrol car with Officer

Slavens. The officers drove down the 2900 block of West Wyoming between midnight and 1 a.m. Poynter noticed a white Ford Explorer parked in front of a residence on the south side of Wyoming Street; the vehicle did not have its parking lights on. Poynter stated that the Illinois Vehicle Code (the Code) (625 ILCS 5/1-100 *et seq.* (West 2012)) requires parking lights to be on if a car is parked on a highway and people are in the vehicle. The Code permits cities to enact an ordinance superseding the Code. He did not know whether the City of Peoria had an ordinance requiring parking lights to be on when a car is parked. He saw two passengers in the car. The officers made a U-turn and pulled up behind the Explorer. They did not use the overhead lights or siren.

¶ 9    Both officers exited the patrol car and approached the Explorer. The officers did not brandish any weapons, use any threatening language or make any commands. Poynter carried his flashlight as he approached the Explorer. He noticed that defendant and Foster each had Smirnoff blueberry lemonade vodka bottles in their laps; he did not know what was in the bottles. He observed a hitter pipe in the ashtray in the center console and smelled burnt cannabis. Poynter saw the keys in the ignition and heard the radio playing. At trial, Poynter could not recall whether the engine was running or not; the Explorer remained parked. Based on seeing the keys in the ignition and defendant in the driver's seat, Poytner considered defendant to be in control of the vehicle. Poynter acted in the same manner as he did at any traffic stop. He identified himself as a police officer, informed defendant and Foster of the reason for the stop, and asked for identification and an insurance card. Defendant told him that he did not possess a valid driver's license.

¶ 10   Based on defendant's statement about his invalid license, the smell of burnt cannabis, the open alcohol bottles, their presence in a high crime area, and the fact that the officers were by themselves, Poynter removed defendant from the vehicle and handcuffed him. Prior to this, the officers did not tell defendant that he was under arrest. Poynter searched defendant but did not find anything illegal. Poynter placed defendant on the ground next to the patrol car and removed the keys from the ignition. A backup officer arrived on the scene and confirmed the revocation of defendant's driver's license. Ultimately, Poynter issued defendant three citations: (1) improper lighting on a parked car; (2) driving with a revoked license; and (3) illegal transportation of alcohol by a driver.

¶ 11   After hearing such evidence, the court denied defendant's motion to quash and suppress, as well as defendant's subsequent motion for reconsideration.

¶ 12   The matter proceeded to a bench trial where the parties stipulated to the following evidence. Slavens conducted a search of the vehicle and found a loaded, black, steel handgun under the right, rear passenger seat. After Poynter read defendant his *Miranda* rights, defendant agreed to speak to Poynter. Poynter questioned defendant about the gun. Defendant told Poynter that he received the weapon from his dead cousin in Atlanta, Jordan Irby. Defendant suffered from mental health issues but did not take medication. He told Poynter someone was out to get him. Defendant believed that the weapon was loaded. He did not think the weapon had been used in a crime.

¶ 13   The court found defendant guilty of aggravated unlawful use of a weapon, entered a finding of guilt, and dismissed the charge of unlawful possession of a weapon by a felon. The court sentenced defendant to six years' imprisonment and three years' mandatory supervised release. In a separate order, the court ordered: "[t]hat a judgment be entered against the defendant for costs." The judge handwrote "$100 Crime Victim's and $20 for Crime

Stoppers." The clerk entered two case payment sheets; the judge did not sign either sheet. Both sheets provide the same itemized assessments equaling $677.50. The clerk did not apply a $5 *per diem* credit.

¶ 14    Defendant appeals. We reverse.

¶ 15                                    ANALYSIS
¶ 16                              I. Motion to Suppress
¶ 17    Defendant argues that the court erred in denying his motion to suppress. Specifically, defendant argues that he was seized at the time that the police pulled their patrol car behind Foster's Explorer and that the seizure was unreasonable. The State argues that the court did not err; the officers did not seize defendant until after they had reasonable suspicion of criminal activity. *People v. Stout*, 106 Ill. 2d 77, 88 (1985).

¶ 18    We review the trial judge's factual findings under a manifest weight of the evidence standard; we review *de novo* the trial judge's ultimate determination on whether the evidence should be suppressed. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006).

¶ 19    The United States and Illinois Constitutions protect a person from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A person is seized when a reasonable person would not feel free to terminate the encounter or decline an officer's request. *Luedemann*, 222 Ill. 2d at 550. A seizure does not occur simply because an officer approaches a car and questions the occupant. *Id.* at 551. We will consider the following four factors when determining whether the police seized defendant: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the person; and (4) the use of language or a tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 553. Although not conclusive, a seizure is less likely to be found when the factors are absent. *Id.*

¶ 20    None of the factors listed above were present when the officers pulled up behind the Explorer and approached the vehicle. Here, only two officers were present, not several. *People v. Cosby*, 231 Ill. 2d 262, 278 (2008) (two officers, without other factors, is not enough to weigh in favor of a seizure; two is different than several). It is undisputed that the officers did not display any weapons. Moreover, the officers did not touch defendant until after he informed them that his license was revoked and Poynter observed signs of criminal activity. Further, the officers did not use coercive language or a tone indicating that compliance was required until after they had reasonable suspicion of criminal activity. Defendant argues that Poynter's request for an insurance card amounts to language indicating that compliance is required. However, Poynter only requested identification and an insurance card after he noticed the open alcohol containers, smelled burnt cannabis, saw a hitter pipe and observed the keys in the ignition. At that point, the officers had reasonable suspicion of criminal activity and lawfully seized defendant.

¶ 21    Moreover, the facts of this case are very similar to those in *Luedemann*, where our supreme court found that the officer did not seize defendant until after he had an articulable suspicion that defendant was intoxicated. *Luedemann*, 222 Ill. 2d at 565. There, the officer drove past defendant's car and parked in the center of the street. *Id.* at 534. The officer did not use his overhead lights or sirens, nor did he brandish any weapons. *Id.* He shined his flashlight as he approached defendant's vehicle. *Id.* The officer observed a neck of a brown glass bottle and

asked defendant what he was doing there. *Id.* While speaking to the defendant, the officer noticed that defendant slurred his speech and had bloodshot eyes. *Id.* at 534-35. The officer radioed for backup and moved his car behind defendants. *Id.* at 535. After another officer arrived, the officer asked defendant to step out of the car. *Id.* The court held that the officer did not effectuate a seizure of the defendant before observing the open bottle and signs of defendant's intoxication. *Id.* at 565.

¶ 22 Here, the officers parked behind Foster's truck but did not block the vehicle in the parking space. Poytner, as in *Luedemann*, shined his flashlight as he approached the vehicle. *Luedemann*, 222 Ill. 2d at 561. Shining a flashlight at night is not a fourth amendment search unless coupled with other coercive behavior. *Id.* at 563. The flashlight merely illuminates the vehicle and allows the officer to see at night. *Id.* There is no evidence of other coercive behavior. Here, as in *Luedemann*, the officers did not turn on their lights or sirens to signal that the police expected defendant to comply. *Id.* at 534. Also, approaching the vehicle from the rear, as opposed to the side, does not indicate coercive behavior. *Id.* at 565. As he approached the vehicle, Poynter observed open alcohol bottles, a hitter pipe and he smelled burnt cannabis. It was only until after he noticed these signs of criminal activity did he request identification and an insurance card. The fact that Poynter did not know whether the City of Peoria enacted a statute superseding the Code is irrelevant. Poynter did not seize defendant until he observed signs of criminal activity.

¶ 23 We accordingly find that the Poynter did not effectuate a seizure of defendant until after he had reasonable, articulable suspicion of criminal activity. The court properly denied defendant's motion to suppress.

¶ 24                              II. Sufficiency of the Evidence

¶ 25 Defendant argues that the State failed to present sufficient evidence to support his conviction. Specifically, defendant argues that the State did not prove that the gun was uncased, which is an element of aggravated unlawful use of a weapon. The State counters that the reasonable inferences from the evidence prove that the gun was uncased.

¶ 26 When a defendant challenges the sufficiency of the evidence, we must determine whether, viewing the evidence in light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The State bears the burden to prove all elements of a crime beyond a reasonable doubt. *People v. Layhew*, 139 Ill. 2d 476, 485 (1990). The burden remains on the State throughout the entire case. *Id.* "The defendant is not required to prove his innocence." (Internal quotation marks omitted.) *Id.* Here, the State had the burden of proving each element, beyond a reasonable doubt, of aggravated unlawful use of a weapon.

> "A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
>> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his  or her land or in his or her abode, legal dwelling, or fixed place  of business, or on the land or in the legal dwelling of another  person as an invitee with that person's permission, any pistol,  revolver, stun gun or taser or other firearm; ***
>>
>>       ***

- 5 -

> (3) One of the following factors is present:
>
>> (A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense[.]" 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2012).

¶ 27 Defense counsel and the State stipulated that Slavens found a black, steel handgun under the right, rear passenger seat of the vehicle. The stipulation made no mention of a case. Assuming the gun was uncased, the prosecution needed to either include that fact in the stipulation or offer evidence of the fact if no stipulated agreement could be reached. The State could have easily resolved the issue by presenting a stipulated fact or testimony that Slavens found the gun uncased. However, that does not change the fact that the burden of proof remained with the State. Section 24-1.6 clearly requires that the gun be uncased. The State had the burden of proving that element. The State would have us assume that the gun was uncased because defendant offered no evidence that it was cased. The law does not require that defendant prove his innocence. *Layhew*, 139 Ill. 2d at 485. Therefore, we cannot infer that the gun was uncased based on defendant's decision not to present evidence that the gun was cased. We reverse defendant's conviction based on the State's failure to prove each element beyond a reasonable doubt.

¶ 28 Based on our reversal of defendant's conviction, we need not address the issue of fees and fines.

¶ 29                                                    CONCLUSION

¶ 30 For the foregoing reasons, the judgment of the circuit court of Peoria County circuit court is reversed.

¶ 31 Reversed.