2022 IL App (1st) 200097-U
No. 1-20-0097
June 13, 2022

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois |
| | ) | |
| Plaintiff-Appellee, | ) | No. 18 CR 03871 |
| | ) | |
| v. | ) | The Honorable |
| SEAN COLLEY[1] | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*: We reverse defendant's conviction where the State failed to prove guilt beyond a reasonable doubt.

---

[1] Although the notice of appeal and briefs from both parties list defendant's name as "Sean Cooley," the record from the circuit court shows defendant's correct name as "Sean Colley. During oral arguments counsel for both parties acknowledged that the notice of appeal and all briefs showd the incorrect name. Subsequently, this court granted counsel's motion to amend the notice of appeal. We refer to defendant by his correct name of "Sean Colley"

¶ 2    Following a bench trial, Sean Colley was convicted of theft (720 ILCS 5/16-1(a) (West 2016)) and two counts of forgery (720 ILCS 5/17-3(a) (West 2016)) and sentenced to 2 years of felony probation. On appeal, Colley contests the sufficiency of the evidence contending the State failed to prove the witness had revoked her long-standing permission to allow Colley to sign and deposit her social security checks. Colley further argues that the trial court erred by admitting evidence of conversations without proper foundation and a witness's prior consistent statements. Colley also contests the sufficiency of the evidence and the convictions on two counts of forgery when the evidence showed at most one forgery. For the reasons that follow, we reverse.

¶ 3                                  BACKGROUND

¶ 4    On October 11, 2017, Ebony Payne told Officer Donovan Foster of the Chicago Police Department that her former boyfriend, Colley, deposited the proceeds from her social security check in his account without her permission. Prosecutors charged Colley with one count of theft and two counts of forgery.

¶ 5    At the bench trial, Payne testified that she was already quadriplegic when she and Colley started a romantic relationship in 2012. In January 2017, she moved into Colley's apartment. She could not sign the checks she receivesd from social security. She authorized Colley to sign her checks and add the money to his account to help him pay for rent, utilities, and groceries.

¶ 6    Payne testified that in August 2017, she fell ill and needed hospitalization. She and Colley decided to end their relationship. She talked to Colley on the telephone in September and October 2017, but Colley did not visit her in the hospital "because [h]e wasn't allowed to come

to the hospital." In their phone conversations, she asked Colley to let her father come to Colley's apartment to pick up her belongings. The trial transcript shows the following testimony:

"Q. *** [D]uring the course of that breakup in September of 2017, did you have a conversation with the Defendant about your Social Security check?

A. Yes, I asked him to just turn it over to my dad.

Q. Did the Defendant turn the check over to your father?

A. He refused.

MS. KEEGAN: Objection, foundation.

THE COURT: Overruled.

Q. *** Did your October check go to [Colley's apartment]?

A. Yes, it did.

Q. Did you ever get that check?

A. No, I did not.

Q. Did you ask Sean for the money?

A. I did.

Q. What did the Defendant say to you?

MS. KEEGAN: Objection, foundation.

THE COURT: Overruled.

THE WITNESS: He said that he would not give me the money, that I couldn't have the money in the beginning. Later on, when I went to the nursing facility and asked him to pay me the money back, he was like, oh, I'll give you $300, but that's all I'm giving you.

Q. *** [S]ometimes he was not authorized to sign the checks?

A. Yes. In September, we didn't really talk about it because I was too ill. There were times when I couldn't, and all I did was ask him for permission to get my things.

Q. In September, you were too ill to talk about whether it was appropriate to sign the checks or not?

A. The check for September.

Q. *** [Y]ou told that officer that Sean was at the hospital and that he grew aggressive when you told him to return all of your belongings and it was then that he was banned from seeing you in the hospital, right?

A. I'm not certain.

Q. So you may have told that to that officer?

A. Probably. But if I said he was at the hospital, then he probably was at the hospital. Whether he was aggressive with me or the staff or the staff told him that he was aggressive with me, I'm not for certain. It was last year.

Q. Did you tell the officer that he was at the hospital and that he was banned from seeing you while at the hospital because he'd grown aggressive; did you make that statement?

A. Yes. But, again, I'm not sure whether me telling the officer that he was aggressive or whether I had seen him that hospital visit and he had grown aggressive or not, I don't know if that was what I was referring to because there were other instances where Sean was at the hospital and he'd grown aggressive and he'd been banned.

Q. So he --

A. It could have been a previous hospital stay that he had grown aggressive and was banned.

Q. *** Do you remember Sean saying that to you, I deposited the check into my account already on October 3rd?

A. He said that on multiple occasions.

Q. *** When did you tell Sean that you wanted – that you wanted him to give your stuff, including your check, to your father?

A. In like September.

Q. Do you know what part of September? Beginning? Middle? End?

A. Could have been all three.

Q. Approximately when did you tell Sean to give your dad your check?

A. I know for certain it was in September.

Q. And that's a check that would have come on or right around October 1st, correct?

A. Right."

¶ 7    Payne admitted on cross-examination that she contacted police shortly after she found out Colley had impregnated another woman. The bank recorded the deposit to Colley's account on October 5, 2017.

¶ 8    Colley called Officer Foster to impeach Payne's testimony about when she told Colley he did not have permission to deposit her social security check to his account. Officer Foster testified Payne told him that when she demanded the check on October 3, 2017, Colley responded by text message, "I deposited the check in my account already." On cross-examination, Officer Foster testified, over objection:

"Q. And Ebony Payne told you *** that the break-up led to her asking for her belongings back, correct?

Yes.

***

Q. And that one of the things she asked for back from the defendant was her Social Security check, correct?

A. Yes, it was.

***

Q. That portion that, quote, I deposited the check in my account already, Ebony Payne indicated to you that that was something the defendant told her during the phone call, correct?

A. Correct.

Q. And Ebony told you that that happened after she asked the defendant for her check back, correct?

A. Correct.

Q. Ebony *** told you that she asked for the check back prior to October 3rd correct?

A. Correct."

¶ 9     The trial court found Colley guilty on all counts and sentenced him to two years probation. Colley now appeals.

¶ 10                                    ANALYSIS

¶ 11     On appeal, Colley argues that (1) the State's evidence was insufficient because it rested on the testimony of a single witness who gave inconsistent and vague testimony regarding when she revoked her long-standing permission allowing Colley to sign and deposit her checks into his account; (2) he was denied a fair trial where, over counsel's objections, the trial court allowed the State to bolster its evidence with Colley's alleged prior statements without proper foundation and allowed inadmissible hearsay statements from Payne; and (3) the trial court erred by convicting him on two counts of forgery.

¶ 12     When reviewing challenges to the sufficiency of evidence, we view the evidence in the light most favorable to the State. We will not reverse the convictions for insufficient evidence if any rational trier of fact could find the State proved beyond a reasonable doubt all the elements of the charged offenses. *People v. Jackson*, 2020 IL 124112, ¶ 64. Reversal is justified

where the evidence is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt of the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317 (1989).

¶ 13                                    Sufficiency of the Evidence

¶ 14        To prove Colley committed forgery, the State needed to prove he knowingly altered a document to make it false and capable of defrauding another. See 720 ILCS 5/17-3(a) (West 2016). "[A] false endorsement can render an otherwise valid check capable of defrauding." *People v. Brown*, 2013 IL 114196, ¶ 42. To prove theft, the State needed to prove Colley knowingly obtained unauthorized control over Payne's property and intended to deprive Payne permanently of the use of that property. See 720 ILCS 5/16-1(a) (West 2016); *People v. Varellas*, 138 Ill. App. 3d 820 (1985).

¶ 15        The State bears the burden to prove all elements of a crime beyond a reasonable doubt. *People v. Layhew*, 139 Ill. 2d 476, 485, 564 N.E.2d 1232 (1990). The burden remains on the State throughout the entire case. *Id.* Colley was not required to prove his innocence, but the State had the burden of proving each element of the offenses beyond a reasonable doubt. For both counts, the trial court needed to determine whether the evidence proved beyond a reasonable doubt that when Colley deposited the October 2017 check into his account, Colley knew Payne had withdrawn her long-standing permission allowing Colley to sign and deposit her checks into his account.

¶ 16        Colley contends that inconsistencies in Payne's testimony make the evidence insufficient to prove him guilty beyond a reasonable doubt. There was no dispute that Payne and Colley lived in the same apartment. It is also undisputed that they had an agreement authorizing Colley

8

to sign Payne's name to the monthly social security checks, deposit proceeds into Colley's account, and use the proceeds to fund their monthly living expenses of rent, utilities, and groceries. Both Payne and Colley acknowledge that the agreement was in place from January 2017 through September 2017. The dispute centers around only the check of October 2017. Hence, before the trial court, the issue was whether the State proved beyond a reasonable doubt that Colley knew Payne had withdrawn her assent to the agreement for the check Colley deposited in October 2017. The evidence at trial shows that Payne was unable to specify when she revoked her permission to sign and deposit her checks, and she did not testify to the time and manner that she informed Colley of her revocation. Officer Foster testified Payne told him that when she demanded the check on October 3, 2017, Colley responded by text message, "I deposited the check in my account already."

¶ 17     Payne's testimony shows that she was unsure of the date on which she told Colley he could no longer deposit her checks. On cross-examination, Payne stated, "In September, we didn't really talk about [the social security check] because I was too ill. *** [A]ll I did was ask him was for permission to get my things." Based on Payne's testimony, she did not advise Colley in September 2017 that he could no longer sign and deposit her checks. The October check was deposited sometime between October 1, 2017, and October 5, 2017. Taking the evidence in the light most favorable to the State, while Payne alleged that she no longer wanted Colley to sign and cash her checks, the trial evidence does not demonstrate that she advised Colley of the change prior to his deposit of the October 2017 check. The evidence of theft and forgery was "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt of Colley's

guilt. See *Slim*, 127 Ill. 2d at 307. We cannot say that the cashing of the October 2017 check supports the convictions. Therefore, we hold that the evidence presented at trial was insufficient to prove Colley guilty of theft and forgery beyond a reasonable doubt.

¶ 18    We reverse Colley's convictions. In light of our disposition, we need not address Colley's other arguments. As we have reversed Colley's conviction based on evidentiary insufficiency, the constitutional prohibition against double jeopardy precludes a retrial. *U.S. Const., amendsl V, XIV; Ill. Const. 1970, art. I. Section 10.* Therefore, "the only proper remedy is a judgment of acquittal." *People v. Brown*, 2013 IL 114196 ¶ 53, 1 N.E.3d 888.

¶ 19                            CONCLUSION

¶ 20    We find that Payne's testimony did not sufficiently support the convictions. Accordingly, we reverse the judgment of the circuit court.

¶ 21    Reversed.